749 A.2d 857 (2000)
330 N.J. Super. 300
Cloyd David BOLINGER and Julianne Bolinger, Plaintiffs-Appellants,
v.
BELL ATLANTIC, Defendant-Respondent, and
Jack Collins, Defendant.
Superior Court of New Jersey, Appellate Division.
Argued Telephonically April 3, 2000.
Decided April 27, 2000.
*858 Rosemary Di Savino, Nutley, for plaintiff-appellant (Ms. Di Savino, on the brief).
Steven W. Suflas, Haddonfield, for defendant-respondent (Archer & Greiner, attorneys; Mr. Suflas and E. Lynne Hirsch, on the brief).
Before Judges HAVEY, KEEFE and A.A. RODRÍGUEZ.
The opinion of the court was delivered by KEEFE, J.A.D.
Plaintiffs, Cloyd David Bolinger and Julianne Bolinger, his wife, appeal from the entry of summary judgment in favor of defendant Bell Atlantic.[1] The issue to be decided is whether plaintiffs' complaint is time-barred, as held by the trial judge, or whether defendant's conduct constituted a continuing violation of the Law Against Discrimination (LAD) and, thus, not subject to the normal two-year statute of limitations. For the reasons expressed herein, we hold that plaintiffs' claim was timebarred and therefore properly dismissed.
The relevant facts are not in dispute. Plaintiff became a lineman for defendant in 1971. He worked in that capacity, and sometimes as a "splicer," until he was injured in August 1984 in a work-related accident. As a result of serious injuries to both elbows, he was placed in a "light duty clerk's position." In that capacity, however, he retained the position of a lineman. Plaintiff worked as a clerk from 1984 until October 29, 1987, when his supervisor, Jack Collins, informed him that he was being removed from that job and placed on disability leave, effective immediately.[2] According to plaintiff, when he was "put out" on disability, Collins told him that he "would be on permanent disability until [he] reached the age of 62, and then [he would] be put on pension at the same pay." Collins told plaintiff that he "couldn't do the work medically as a clerk." Plaintiff objected to Collins' statement: "I said I didn't believe it, that I could do the work. I had been doing the work." Plaintiff's union representative was present at the meeting and told plaintiff "he didn't agree with it, and they would pursue it." Plaintiff, however, filed no grievance stemming from the meeting.
Plaintiff collected fifty per cent of his salary as disability pay. One week after he was put on disability, plaintiff went to real estate school. Thereafter, he made no attempt to contact defendant to inquire about his job status. He spoke with his former Bell Atlantic colleagues only if he saw "somebody at a coffee shop or at the Acme or something." When asked if he ever told anyone at Bell Atlantic that he wanted to return, plaintiff replied, "I don't believe so, other than just at a coffee shop again. Nobody official."
He continued to experience pain if he "did anything excessive without resting [his] hands," but he saw no doctors for the problem. From October 1987 until March 1995, no one from the company contacted him about returning to work. As a result of a medical examination on March 8,1995, a recommendation was made that plaintiff return to work with restrictions as to the amount of weight he could lift (no greater than twenty-five pounds), and a direction *859 to avoid "repetitive flexion and extension at the elbows," as well as keeping "upper extremities in one position for long periods of time." Shortly thereafter, plaintiff received a message on his answering machine from Regina Ralston, defendant's employee, stating: "The computer has matched you up with a job in the computer. Be to work at 8 o'clock on Monday or lose your benefits." At that time he had been working for a church as a janitor.
He returned to work with the title of "repair service clerk." In that job, he answered the phone, listened to customer complaints, and processed the necessary paperwork relating to those calls and his response activity. He has continued in that position, apparently, until the present.
This suit was filed on November 14, 1996, approximately twenty months after he returned to work and nine years after being placed on disability. The complaint alleged that defendant failed to provide reasonable accommodation to plaintiff's limited medical restrictions in accordance with the "laws of the State of New Jersey" and in "clear violation of the public policy" of this State. Plaintiff's complaint referred to the "laws" and "public policy" of the State of New Jersey, without citing any particular law as the basis of his claim. Nonetheless, the parties and the trial court proceeded, without objection, under the assumption that plaintiff's claim arose under the LAD.
During his deposition, plaintiff was asked to explain the basis of his lawsuit:
Q: What accommodations did Bell Atlantic fail to provide you with?
A: A job.
Q: Okay. What else?
A: That's it in a nutshell.
Q: What job?
A: The job with Bell Telephone.
Q: And as what?
A: As a clerk.
Q: As a clerk or as a lineman?
A: As a clerk, when they said they were going to put me out, I said to Mr. Collins, I can do this job. He said, no you can't. They put me out. So as a clerk, they didn't give me a job.
....
Q: What accommodations did you ask for to perform that job that Bell Atlantic didn't give you?
[PLAINTIFF'S COUNSEL]: Objection.
THE WITNESS: A job, a job. That's the only accommodations I asked for.
Plaintiff argues that the trial court's decision was incorrect in that plaintiff established he was the victim of a continuing violation because defendant had "utilized a woefully inadequate and blatantly discriminatory system for making employment decisions regarding handicapped persons." Plaintiff also asserts that his receipt of unequal wages, the half-pay he received while on disability, for the seven years rendered his injury a continuing violation. Thus, plaintiff asserts, the statute of limitations began to run on "the last day that plaintiff was not permitted to work in March of 1995" and his November 1996 complaint was not time-barred.
Defendant argues plaintiff cannot establish the continuing violation theory under the facts of this case because, among other things, plaintiff failed to establish that defendant engaged in a pattern or practice of discrimination. Consequently, defendant argues, the limitations period commenced in October 1987 upon the occurrence of the allegedly discriminatory act of which plaintiff complains, his transfer from his clerical position to disability leave.
Because an appellate court must grant the non-moving party all favorable inferences from the facts, we will assume for the purpose of our analysis that defendant's policies were discriminatory as applied to plaintiff, and that he was discriminated against when he was placed on halfpay disability status. Brill v. Guardian *860 Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 (1995).
The statute of limitations for all claims asserted under the LAD is two years. Montells v. Haynes, 133 N.J. 282, 286, 627 A.2d 654 (1993). Because the two-year period was established conclusively by the Court for the first time on July 27, 1993, however, it applies only to cases in which the operative facts arise after that date. Id. at 298, 627 A.2d 654. Cases pending on the date of the decision, or cases in which the operative facts arose before that date, were subject to a six-year limitations period. Ibid. If a claim arose based on an act that occurred in October 1987, however, both the six-year and the two-year limitations periods would operate to bar a complaint filed nine years later on November 14,1996.
For causes of action arising under antidiscrimination laws, however, a judicially created doctrine known as the continuing violation theory has developed as an equitable exception to the statute of limitations. Harel v. Rutgers, The State Univ., 5 F.Supp.2d 246, 261 (D.N.J.1998), aff'd, 191 F.3d 444 (3d Cir.1999), cert. denied, sub nom., Harel v. Lawrence, ___ U.S. ____, 120 S.Ct. 936, 145 L.Ed.2d 814 (2000); Molovinsky v. Monterey Coop., Inc., 689 A.2d 531, 534 (D.C.1996); Meek v. Michigan Bell Tel. Co., 193 Mich.App. 340, 483 N.W.2d 407, 409 (1991), appeal denied, 440 Mich. 872, 486 N.W.2d 743 (1992); Kohn v. City of Minneapolis Fire Dep't, 583 N.W.2d 7, 11 (Minn.Ct.App. 1998); Haliburton v. City of San Antonio, 974 S.W.2d 779, 781 (Tex.Ct.App.1998); see also Terry v. Mercer Cty. Bd. of Chosen Freeholders, 173 N.J.Super. 249, 253, 414 A.2d 30 (App.Div.1980) (applying the doctrine, with no analysis, to permit filing of a complaint beyond the then-180 day limitations period set by the LAD), modified on other grounds, 86 N.J. 141, 430 A.2d 194 (1981).
New Jersey recognizes the existence of a similar "continuing tort doctrine," which is unrestricted to discrimination claims and provides that when an individual experiences a "continual, cumulative pattern of tortious conduct" the limitations period begins only when the wrongful action ceases. Wilson v. Wal-Mart Stores, 158 N.J. 263, 272, 729 A.2d 1006 (1999). The doctrine is based on the premise that the conduct becomes tortious and actionable precisely because "of its continuous, cumulative, synergistic nature." Id. at 273, 729 A.2d 1006 (quoting Bustamento v. Tucker, 607 So.2d 532, 542 (La.1992)). The doctrine applies to claims filed under the LAD, and thus the limitations period for that plaintiff's allegations of hostile-work-environment sexual harassment commenced on the date of her termination, the last day of her harassment. Id. at 273-74, 729 A.2d 1006.
Two types of continuing violations are recognized in the federal context: (1) "systemic violations," which originate in a discriminatory policy or practice that continues into the limitations period, and (2) "serial violations," which consist of a various number of discriminatory acts, all emanating from the same discriminatory animus, where each act nonetheless constitutes a separate actionable wrong. Thomas v. Eastman Kodak Co., 183 F.3d 38, 53 (1st Cir.1999), cert. denied, ___U.S. ____, 120 S.Ct. 1174, 145 L.Ed.2d 1082 (2000); accord Bullington v. United Air Lines, Inc., supra, 186 F.3d at 1311. However, the two types may become confused or merged, where, for example, a series of sexually harassing acts by several supervisors is seen as a "systematic policy of discrimination." Anderson v. Reno, 190 F.3d 930, 936 (9th Cir.1999); see also Thomas v. Eastman Kodak Co., supra, 183 F.3d at 53 (observing that, as applied in the context of federal employment discrimination laws, the doctrine has been labeled as "muddled," and "misguided and unnecessary").
To establish a continuing violation based on a series of discriminatory acts, a plaintiff must show that
*861 (1) at least one allegedly discriminatory act occurred within the filing period and (2) the discrimination is "more than the occurrence of isolated or sporadic acts of intentional discrimination" and is instead a continuing pattern of discrimination.
[Harel v. Rutgers, The State Univ., supra, 5 F.Supp.2d at 261 (quoting Rush v. Scott Specialty Gases, Inc., 113 F.3d 476, 481 (3d Cir.1997)).]
Upon satisfying these criteria, a plaintiff may recover for damages incurred as a result of the entire continuing violation. Ibid. In evaluating whether alleged incidents of discrimination constitute a continuing violation, a court should consider three factors:
(i) subject matterwhether the violations constitute the same type of discrimination; (ii) frequency; and (iii) permanencewhether the nature of the violations should trigger an employee's awareness of the need to assert her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate.
[Bullington v. United Air Lines, Inc., supra, 186 F.3d at 1310.]
Plaintiff argues that the discriminatory treatment he experienced constituted a continuing violation for the entire seven-and-a-half years he was on disability pay because he was sent home as the result of a job search policy that discriminated against handicapped persons and that policy remained in place for the seven years plaintiff was out on disability. Plaintiff also argues that the half-pay he received while on disability constituted "unequal wages" and rendered his injury a continuing violation.
In 1980, when the LAD required that complaints under that law be filed within 180 days of the alleged discriminatory act, this court found that the "payment of unequal wages and discriminatory refusals to promote are continuing violations for purposes of determining whether a claim is barred." Terry v. Mercer Cty. Bd. of Chosen Freeholders, supra, 173 N.J.Super. at 253, 414 A.2d 30. In that case, the female plaintiffs, employees at a youth correctional facility, were paid lower salaries than their male counterparts, required to perform housekeeping duties, and denied equal promotional opportunities. Id. at 252, 414 A.2d 30. That case, however, is factually dissimilar from the case under consideration.
Even if defendant's discriminatory policies and plaintiff's half-pay status continued for seven-and-a-half years, plaintiff's placement on half-pay disability status was a discrete event in the same manner as a termination or denial of a promotion resulting from a discriminatory or unlawful policy. In Bullington, supra, 186 F.3d at 1309, on three different occasions, namely January 1993, March 1995, and May 1995, the defendant-airline denied the application for the position of flight officer made by the plaintiff, one of the defendant's female ground school academic instructors who also was a certified commercial pilot. The court rejected the plaintiff's contention that the three incidents constituted a continuing violation so as to excuse her failure to file a timely complaint with the EEOC within 300 days of the 1993 incident. Id. at 1310-11. The court found that although the defendant's 1993 conduct was of the same general type as its 1995 conduct, "the 1993 decision was a discrete and salient event that put [the plaintiff] on notice that [the defendant] violated her rights." Id. at 1311.
In Beck v. Tribert, 312 N.J.Super. 335, 345-47, 711 A.2d 951 (App.Div.), certif. denied, 156 N.J. 424, 719 A.2d 1022 (1998), the plaintiff alleged he was wrongfully discharged in violation of the Conscientious Employee Protection Act, N.J.S.A. 34:19-1 to -8, but filed his complaint almost one year beyond the applicable limitations period. He alleged that his discharge was part of a continuing violation that included retaliatory negative references. The court *862 found, however, that the plaintiff's termination "was a `discrete event' which triggered his duty to `assert his rights arising from that deprivation.'" Id. at 346, 711 A.2d 951 (quoting West v. Philadelphia Elec. Co., 45 F.3d 744, 756 (3d Cir. 1995)).
In the same manner as the plaintiffs in Bullington and Beck, plaintiff's removal from full-time status and placement on disability was a discrete, permanent event that placed him on notice that his rights were being violated and triggered his duty to take legal action to recoup those rights, if he so desired. Plaintiff admitted that the day he was removed from his job, Collins expressly told him that he would be placed on "permanent disability until [he] reached the age of 62, and then [he would] be put on pension at the same pay." He had no reason to believe his status would change for the better or worse, and thus he had full notice of the extent of the violation. His claim did not arise as the result of continuously inflicted, albeit discrete and individual injuries that, taken together, comprised a single tortious act. To the contrary, plaintiff had an actionable claim the moment he was removed from all duties and placed on half-pay status. At that point, he experienced the full impact of his injury, although the amount of his actual damages may have continued to accrue the longer he remained on disability status.
The judgment under review is affirmed.
NOTES
[1] Julianne Bolinger's claim is derivative of her husband's. Accordingly, all references herein to "plaintiff" in the singular shall be to Cloyd David Bolinger.
[2] Collins was named as a defendant but never served.