985 A.2d 1225

FERNANDO ROA AND LILIANA ROA, PLAINTIFFS–RESPONDENTS, v. LAFE AND MARINO ROA, DEFENDANTS–APPELLANTS.

Argued September 14, 2009—Decided January 14, 2010.

556

558

*Dena E. Epstein,* argued the cause for appellants (*Jackson Lewis,* attorneys; *Ms. Epstein* and *Robert M. Pettigrew,* on the brief).

*Louis A. Zayas,* argued the cause for respondents (*Ginarte O'Dwyer Gonzalez Gallardo & Winograd,* attorneys).

Justice LONG delivered the opinion of the Court.

At issue on this appeal are several questions centering on the operation of the two-year statute of limitations applicable to the antiretaliation provision of New Jersey's Law Against Discrimination (LAD), *N.J.S.A.* 10:5–12(d). In particular, we are asked to declare whether the statute of limitations bars a retaliation claim based both on an employee's discharge and on a post-discharge retaliatory act, where the former is beyond the two-year limitations period and the latter is not. Critical to that question is the issue of whether the post-discharge retaliatory act can constitute the last act in a "continuing violation," thus sweeping in the untimely discharge claim. Also before us is the matter of whether the post-discharge retaliation must relate to present or future employment to be actionable.

We hold that the limitations clock begins to run on a discrete retaliatory act, such as discharge, on the date on which the act takes place. We further hold that a timely claim based on post-discharge retaliatory conduct does not sweep in a prior untimely discrete act which the victim knew or ought to have known gave rise to a retaliation claim. We likewise hold that a discrete post-discharge act of retaliation is independently actionable even if it does not relate to present or future employment. Although not actionable, evidence relating to barred claims may be admissible under *N.J.R.E.* 404(b) in the trial of the timely claim.

## I.

This case comes to us upon the grant of defendants' motion to dismiss the complaint for failure to state a claim upon which relief can be granted. *R.* 4:6–2(e). Such a motion must be based on the pleadings themselves. Here the motion was based upon evidence, including certifications, outside of the pleadings. We therefore view the record in a light most favorable to the non-moving party, which is the standard applicable to summary judgment. *See R.* 4:6–2 ("If ... matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided by *R.* 4:46 . . . ."). Further, because the motion was filed prior to an answer and before the completion of discovery, we derive the facts from the complaint and from the certifications supporting and opposing the motion.

In 2003, Fernando and Liliana Roa (collectively plaintiffs) were employed by Gonzalez and Tapanes Foods, Inc. ("G & T"), dba LAFE Foods (collectively defendants). Fernando's brother Marino Roa,[1] a vice president at G & T, supervised Fernando and Liliana.

At that time, Marino is alleged to have been romantically involved with two female subordinates. On Valentine's Day, 2003, one of those women left a gift for him. When Marino's wife found the gift and confronted him about it, Marino asked Fernando to lie, to claim that the gift was intended for Fernando, and to confirm that Marino was not having an extramarital affair. Although Fernando apparently initially agreed to assist Marino, at some point thereafter, he spoke with Marino's wife, revealing the true story behind the Valentine's Day gift.

In response, Marino began to harass and threaten plaintiffs, making "life at work miserable." That harassment included threats to fire both of them. After enduring that treatment for an

---

[1] Because plaintiffs and defendant share a surname, we refer to them by their first names.

unspecified amount of time, Fernando spoke with Carlos Pena, the owner and president of G & T, about Marino's sexual harassment of the two women with whom Marino was involved and asked that Pena intervene. Pena refused to take any action and, following Fernando's complaint, Marino's harassment of plaintiffs intensified.

Liliana's employment was terminated on or about August 24, 2003. Several weeks later, on September 15, 2003, Liliana received notice that she was ineligible for unemployment compensation benefits because G & T had stated that it terminated her employment due to misconduct. Liliana appealed that determination on September 22, 2003, contending that Marino simply asked her to leave the premises, told her not to return to work, and provided no reason for the discharge. Crediting Liliana's testimony, the Appeal Tribunal determined that Liliana was entitled to unemployment benefits. Liliana was notified of that decision on October 21, 2003, but did not begin to receive benefits until approximately February 2004.

Fernando's employment was terminated on or about October 3, 2003.[2] While he was still employed, on October 2, 2003, Liliana underwent surgery, incurring, according to plaintiffs, approximately $6,000 in medical bills. Plaintiffs expected those bills to be covered by Fernando's health insurance. But, on or about November 11, 2003, Fernando received a letter from his health insurer informing him that it would not pay for the surgery because Fernando was not covered by the policy at the time the medical services were rendered. (On October 27, 2003, G & T had terminated Fernando's benefits effective September 30, 2003, while he was still employed.) Eventually, the premature termination of Fernando's health insurance was corrected to reflect a

---

[2] The exact date of the termination is unclear from the record. It may have been as late as October 12, 2003. Because both dates are outside the two-year limitations period, the discrepancy is irrelevant to our inquiry.

termination date of October 3, 2003, and the claim was paid around February 2004.

As a result of the delay in receiving unemployment and medical benefits, plaintiffs claim that they experienced financial problems, their credit rating was damaged, and they received constant calls from debt collectors, which caused them a "tremendous amount of stress and anxiety."

On November 3, 2005, plaintiffs filed a complaint that alleged that G & T engaged in unlawful retaliation in violation of New Jersey's Law Against Discrimination (LAD), *N.J.S.A.* 10:5–12(d) (count one); that Marino aided and abetted in that unlawful conduct (count two); that defendants' conduct violated the public policy of New Jersey (count three); and that G & T negligently supervised Marino (count four).

Defendants moved to dismiss the complaint for failure to state a claim, alleging that it was time-barred by the two-year statute of limitations applicable to violations of the LAD. The trial judge dismissed the complaint in its entirety, with prejudice, reasoning that the retaliatory discharges were time-barred, that plaintiffs' post-employment claims were not adverse "employment" actions, and that because plaintiffs' terminations were themselves discrete acts, they could not sweep in prior time-barred discrete acts on a "continuing violation" theory.

The Appellate Division affirmed in part and reversed in part, declaring that Liliana's claim was time-barred because she knew that defendants had engaged in retaliatory conduct in August 2003 when she was discharged, and at the latest in October 2003 when she received notification of the Appeal Tribunal's decision regarding the denial of her unemployment benefits. *Roa v. Roa*, 402 *N.J.Super.* 529, 542, 955 *A.*2d 930 (App.Div.2008). In respect of Fernando's post-discharge claim concerning defendants' cancellation of his health insurance, the panel ruled that that claim was actionable irrespective of the fact that the conduct was "not related to current or prospective employment," and that the claim

could be timely if Fernando did not become aware of the cancellation until November 11, 2003. *Id.* at 540, 542, 955 *A.2d* 930.

Further, according to the panel, the insurance cancellation could constitute the last in a series of retaliatory acts under the continuing violation theory. *Id.* at 542–43, 955 *A.2d* 930. Accordingly, the panel remanded counts one and two of Fernando's complaint to the trial judge for further proceedings.

We granted defendants' petition for certification, 197 *N.J.* 477, 963 *A.2d* 846 (2009),[3] and now affirm in part and reverse in part.

## II.

Defendants argue that, to the extent that Fernando's retaliation claim is based on his discharge, which occurred more than two years before the filing of suit, the claim is time-barred. They further contend that the post-termination cancellation of Fernando's insurance is not independently actionable because it is unrelated to his present or future employment and trivial. Finally, defendants contend that even if the post-termination conduct is actionable, it would not "sweep in" the termination under the continuing violation doctrine because the termination was an untimely discrete act not subject to that doctrine.

Fernando counters that the post-termination cancellation of his insurance is independently actionable and timely and that it also constitutes the last act in a continuing violation, thus reviving his otherwise moribund termination claim.

## III.

The antiretaliation provision of LAD declares it to be unlawful retaliation:

[f]or any person to take reprisals against any person because that person has opposed any practices or acts forbidden under this act or because that person has

---

[3] Because plaintiffs did not file a cross-petition for certification, the dismissal of Liliana's claims and Fernando's two remaining claims are not before us.

filed a complaint, testified or assisted in any proceeding under this act or to coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of, or on account of that person having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by this act.

[*N.J.S.A.* 10:5–12(d).]

The statute of limitations for LAD claims is two years. *Montells v. Haynes,* 133 *N.J.* 282, 292, 627 *A.*2d 654 (1993). That statute operates as do all limitations periods, to cut off a claim that is filed more than two years after the complained-of discriminatory act. "For causes of action arising under anti-discrimination laws, however, a judicially created doctrine known as the continuing violation theory has developed as an equitable exception to the statute of limitations." *Bolinger v. Bell Atlantic,* 330 *N.J.Super.* 300, 306, 749 *A.*2d 857 (App.Div.2000). The doctrine provides that when an individual experiences a "continual, cumulative pattern of tortious conduct, the statute of limitations does not begin to run until the wrongful action ceases." *Wilson v. Wal–Mart Stores,* 158 *N.J.* 263, 272, 729 *A.*2d 1006 (1999). The premise underlying the doctrine is that the conduct becomes actionable because of its "continuous, cumulative, synergistic nature." *Id.* at 273, 729 *A.*2d 1006 (quoting *Bustamento v. Tucker,* 607 *So.*2d 532, 542 (La. 1992)). *See also Ali v. Rutgers,* 166 *N.J.* 280, 286, 765 *A.*2d 714 (2000) (reaffirming "existing jurisprudence" as articulated in *Wilson*).

Subsequently, in *National Railroad Passenger Corp. v. Morgan,* 536 *U.S.* 101, 122 *S.Ct.* 2061, 153 *L.Ed.*2d 106 (2002), the United States Supreme Court grappled with the nuances of the continuing violation doctrine in a case brought under Title VII of the Federal Civil Rights Act of 1964. The plaintiff in *Morgan* alleged both discrete retaliatory and discriminatory acts, and a racially hostile work environment. *Id.* at 104, 122 *S.Ct.* at 2068, 153 *L.Ed.*2d at 116. The questions before the Court centered on what constitutes an unlawful employment practice and when it occurs. In analyzing the statute of limitations issue, the Court differentiated between discrete acts and continuing violations, noting that some discrete acts, "such as termination, failure to

promote, denial of transfer, or refusal to hire are easy to identify." *Id.* at 114, 122 *S.Ct.* at 2073, 153 *L.Ed.*2d at 122. The Court continued: "[e]ach [such] incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" *Ibid.* Accordingly, for limitations purposes, a "discrete retaliatory or discriminatory act occur[s] on the day that it 'happen[s].'" *Id.* at 110, 122 *S.Ct.* at 2070, 153 *L.Ed.*2d at 120.

To the contrary, the Court described a continuing violation as "a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Id.* at 117, 122 *S.Ct.* at 2074, 153 *L.Ed.*2d at 124 (quoting 42 *U.S.C.* 2000e–5(e)(1)). Such a cause of action accrues on the date on which the last component act occurred. *Ibid.*

*Morgan* ultimately set forth the following rules:

> [D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act. The charge, therefore, must be filed within the [statutorily prescribed] time period after the discrete discriminatory act occurred. The existence of past acts and the employee's prior knowledge of their occurrence, however, does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed. Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim.
>
> [*Id.* at 113, 122 *S.Ct.* at 2072, 153 *L.Ed.*2d at 122.]

*Morgan* established a "bright-line" rule that "individually actionable allegations cannot be aggregated." *O'Connor v. City of Newark,* 440 *F.*3d 125, 127 (3d Cir.2006); *see also, e.g.,* Benjamin J. Morris, *A Door Left Open? National Railroad Passenger Corporation v. Morgan and Its Effect on Post–Filing Discrete Acts in Employment Discrimination Suits,* 43 *Cal. W.L.Rev.* 497, 508 (2007) (quoting *Morgan, supra,* 536 *U.S.* at 113, 122 *S.Ct.* at 2072, 153 *L.Ed.*2d at 122) ("The Court [in *Morgan*] . . . emphasized that discrete acts of discrimination and retaliation 'are not actionable if time barred, even when they are related to acts alleged in timely filed charges.' "); Vincent Cheng, *National Rail-*

road Passenger Corporation v. Morgan: A Problematic Formulation of the Continuing Violation Theory, 91 Cal. L.Rev. 1417, 1423–24 (2003) (noting Morgan's holding that "discrete discriminatory and retaliatory acts that fall outside Title VII's statute of limitations period are time-barred, rejecting the application of the continuing violation theory to such acts." (footnote omitted)).

Courts have noted that the distinction between a discrete act and a continuing violation "is not an artifact of Title VII, but is rather a generic feature of federal employment law. Thus, in whatever statutory context the distinction may arise, Morgan will control." O'Connor, supra, 440 F.3d at 128. See also Hildebrandt v. Ill. Dep't of Natural Res., 347 F.3d 1014, 1036 n. 18 (7th Cir.2003) (citing Sharpe v. Cureton, 319 F.3d 259, 267 (6th Cir. 2003) ("We can find no principled basis upon which to restrict Morgan to Title VII claims. . . ."); RK Ventures, Inc. v. City of Seattle, 307 F.3d 1045, 1061 (9th Cir.2002) (applying Morgan to § 1983 claims)).

■ Because we look to federal case law as a "key source of interpretative authority" in connection with the LAD, Lehmann v. Toys 'R' Us, Inc., 132 N.J. 587, 600, 626 A.2d 445 (1993) (quoting Grigoletti v. Ortho Pharm. Corp., 118 N.J. 89, 97, 570 A.2d 903 (1990)), it is not surprising that in Shepherd v. Hunterdon Developmental Center, 174 N.J. 1, 803 A.2d 611 (2002), we adopted Morgan's analytical framework in a LAD case. After detailing Morgan's holding and expressing our affirmation of it, Justice Verniero, writing for the Court, posed the following questions for disposition in analyzing a statute of limitations issue:

First, have plaintiffs alleged one or more discrete acts of discriminatory conduct by defendants? If yes, then their cause of action would have accrued on the day on which those individual acts occurred. Second, have plaintiffs alleged a pattern or series of acts, any one of which may not be actionable as a discrete act, but when viewed cumulatively constitute a hostile work environment? If yes, then their cause of action would have accrued on the date on which the last act occurred, notwithstanding "that some of the component acts of the hostile work environment [have fallen] outside the statutory time period."

[Id. at 21, 803 A.2d 611 (quoting Morgan, supra, 536 U.S. at 117, 122 S.Ct. at 2074, 153 L.Ed.2d at 124).]

That is the backdrop for our inquiry.

## IV.

We begin with defendants' contention that Fernando's retaliatory discharge claim, standing alone, is untimely, a position with which we are in agreement. Under *Morgan* and *Shepherd,* a discharge is a discrete discriminatory act that places an employee on notice of the existence of a cause of action and of the need to file a claim. The statute of limitations begins to run on the day that act takes place. *Shepherd, supra,* 174 *N.J.* at 19, 803 *A.*2d 611 (quoting *Morgan, supra,* 536 *U.S.* at 110, 122 *S.Ct.* at 2070, 153 *L.Ed.*2d at 120) (a "discrete retaliatory or discriminatory act 'occur[s]' on the day that it 'happen[s].' "). Here, Fernando was discharged on October 3, 2003, more than two years prior to the filing of his complaint. Thus, unless that claim is salvageable under some other theory, it is barred by the statute of limitations.

It is Fernando's position that the continuing violation theory applies, that is, the discharge was part of a series of retaliatory acts, the last of which was the cancellation of his insurance. Because his complaint was filed within two years of that act, he argues that the discharge claim is also timely.

Defendants counter that the continuing violation theory cannot be applied to sweep in an otherwise time-barred discrete act. We agree. As we have said, the continuing violation theory was developed to allow for the aggregation of acts, each of which, in itself, might not have alerted the employee of the existence of a claim, but which together show a pattern of discrimination. In those circumstances, the last act is said to sweep in otherwise untimely prior non-discrete acts.

What the doctrine does not permit is the aggregation of discrete discriminatory acts for the purpose of reviving an untimely act of discrimination that the victim knew or should have known was actionable. Each such "discrete discriminatory act starts a new clock for filing charges alleging that act." *Morgan, supra,*

536 *U.S.* at 113, 122 *S.Ct.* at 2072, 153 *L.Ed.*2d at 122; *see also Shepherd, supra,* 174 *N.J.* at 19, 803 *A.*2d 611 (quoting *Morgan, supra,* 536 *U.S.* at 110, 122 *S.Ct.* at 2071, 153 *L.Ed.*2d at 120) ("an employee under Title VII 'must file a charge within 180 or 300 days of the date of the [discrete] act or lose the ability to recover for it.' "). In other words, when Fernando was fired he clearly knew, or should have known, that he had been the subject of retaliation by defendants, and should have filed his complaint within two years thereof. When he did not do so, the termination, as a claim, was lost and was not subject to a continuing violation analysis.

### V.

That, however, does not bar Fernando from pursuing a timely claim based on post-discharge retaliation:

> The existence of past acts and the employee's prior knowledge of their occurrence, however, does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed.
>
> [*Morgan, supra,* 536 *U.S.* at 113, 122 *S.Ct.* at 2072, 153 *L.Ed.*2d at 122.]

We thus turn to the question of whether Fernando's claim regarding the cancellation of his insurance was, in fact, timely.

Fernando's health benefits were canceled on October 27, 2003, which is more than two years prior to the filing of his complaint. However, he contends that the discovery rule saves his claim because he only became aware that his insurance had been canceled on November 11, 2003. If that is the pivotal date, then Fernando's November 3, 2005, complaint was timely.

Although at common law, parties could institute litigation at any time, statutes of limitations have since been enacted for all causes of action in order to "promote repose by giving security and stability to human affairs." *Caravaggio v. D'Agostini,* 166 *N.J.* 237, 245, 765 *A.*2d 182 (2001) (quoting *Wood v. Carpenter,* 101 *U.S.* 135, 139, 25 *L.Ed.* 807, 808 (1879)). Thus,

[w]hen a plaintiff knows or has reason to know that he has a cause of action against an identifiable defendant and voluntarily sleeps on his rights so long as to permit the customary period of limitations to expire, the pertinent considerations of individual justice as well as the broader considerations of repose, coincide to bar his action. Where, however, the plaintiff does not know or have reason to know that he has a cause of action against an identifiable defendant until after the normal period of limitations has expired, the considerations of individual justice and the considerations of repose are in conflict and other factors may fairly be brought into play.

[*Caravaggio, supra*, 166 *N.J.* at 245, 765 *A.2d* 182 (quoting *Farrell v Votator Div. of Chemetron Corp.*, 62 *N.J.* 111, 115, 299 *A.2d* 394 (1973); *Fernandi v. Strully*, 35 *N.J.* 434, 438, 173 *A.2d* 277 (1961)).]

That latter notion is known as the "discovery rule," whose purpose

"is to avoid harsh results that otherwise would flow from mechanical application of a statute of limitations." [*Vispisiano* [*v. Ashland Chem. Co.*], ... 107 *N.J.* ... [416,] 426 [(1987)]]. Accordingly, the doctrine "postpon[es] the accrual of a cause of action" so long as a party reasonably is unaware either that he has been injured, or that the injury is due to the fault or neglect of an identifiable individual or entity. *Id.* at 426–27, 527 *A.2d* 66; *accord Lynch v. Rubacky*[,] 85 *N.J.* 65, 70, 424 *A.2d* 1169 (1981); *Lopez* [*v. Swyer*], ... 62 *N.J.* [267,] 274, 300 *A.2d* 563 [(1973)].

[*Caravaggio, supra*, 166 *N.J* at 245, 765 *A.2d* 182 (first alternation in original) (quoting *Abboud v. Viscomi*, 111 *N.J.* 56, 62–63, 543 *A.2d* 29 (1988)).]

At the heart of the discovery rule is the fundamental unfairness of barring claims of which a party is unaware. *Mancuso v. Neckles*, 163 *N.J.* 26, 29, 747 *A.2d* 255 (2000). Indeed, since its adoption, we have resorted to the discovery rule "whenever equity and justice have seemed to call for its application." *Lopez, supra*, 62 *N.J.* at 273, 300 *A.2d* 563 (discussing the expansion of the "discovery rule" to include torts other than foreign body malpractice actions); *see also, e.g., Lapka v. Porter Hayden Co.*, 162 *N.J.* 545, 555–56, 745 *A.2d* 525 (2000) (applying "discovery rule" to occupational asbestos exposure claim); *Vispisiano, supra*, 107 *N.J.* at 426, 527 *A.2d* 66 (toxic tort claim); *O'Keeffe v. Snyder*, 83 *N.J.* 478, 493, 416 *A.2d* 862 (1980) (replevin of painting); *Diamond v. N.J. Bell Tel. Co.*, 51 *N.J.* 594, 599, 242 *A.2d* 622 (1968) (negligent installation of underground conduit); *New Mkt. Poultry Farms, Inc. v. Fellows*, 51 *N.J.* 419, 425, 241 *A.2d* 633 (1968) (professional error of land surveyor).

The Appellate Division impliedly recognized the applicability of the discovery rule to Fernando's insurance claim insofar as it permitted him to prove that "he did not know, or could not have reasonably known, about the cancellation at an earlier date." *Roa, supra*, 402 *N.J.Super.* at 542, 955 *A.2d* 930. We agree with that approach. The application of the discovery rule in these circumstances, in which Fernando claims to have been in the dark over the cancellation of his insurance until November 11, is fair. There is simply nothing about a LAD case that would militate against applying the equitable principles informing the discovery rule to allow pursuit of a claim of which the party was reasonably unaware. *See, e.g., Jones v. Jersey City Med. Ctr.*, 20 *F.Supp.2d* 770 (D.N.J.1998) (applying discovery rule to Conscientious Employee Protection Act (CEPA) claim). Such a rule protects all parties. By its application, employers cannot shorten the period of limitations by providing delayed notice, nor can employees toll the statute of limitations through unreasonable conduct or willful blindness. In sum, we are satisfied that, assuming, without deciding, that he was unaware of it until November 11, 2003, Fernando's claim regarding the cancellation of his insurance is not barred by the statute of limitations.

## VI.

Defendants next contend that even if it is timely, there are substantive bars to Fernando's pursuit of his discrimination claim based on the cancellation of his insurance. We will examine those contentions serially.

## A.

Defendants first claim that because the insurance cancellation did not involve harm to Fernando's actual employment or proposed employment elsewhere, it is not actionable under the antiretaliation provision of the LAD. We disagree. On its face, there is no suggestion in the Act of the limitation that defendants seek to overlay upon it. To be sure, the Legislature defined the

terms "unlawful employment practice" and "unlawful discrimination" as those "practices and acts specified in [*N.J.S.A.* 10:5–12]." *N.J.S.A.* 10:5–5(d). From that, defendants intuit that the scope of actionable retaliatory conduct is limited to the employment related acts prohibited in *N.J.S.A.* 10:5–12. The problem with that argument is that the words "practices" and "acts" in the antiretaliation provision refer to the conduct of the target of the retaliation in opposing "practices or acts" prohibited by the LAD, not to the conduct of the retaliator, which is referred to generically as "reprisals." Given that the Legislature has specifically expressed an intent that the LAD "be liberally construed," *N.J.S.A.* 10:5–3, reading into the statute an unstated exclusion cannot be countenanced.

Further on point is relevant federal case law, to which we look for guidance. Recently, the United States Supreme Court specifically rejected a defendant's contention that "Title VII's antiretaliation provision forbids only those employer actions and resulting harms that are related to employment or the workplace." *Burlington N. & Santa Fe Ry. Co. v. White,* 548 *U.S.* 53, 61, 126 *S.Ct.* 2405, 2411, 165 *L.Ed.*2d 345, 355 (2006). In doing so, the Court noted that "[t]he antiretaliation provision seeks to secure [Title VII's] primary objective by preventing an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's basic guarantees." *Id.* at 63, 126 *S.Ct.* at 2412, 165 *L.Ed.*2d at 356. Thus, the Court held that limiting the statute to employment and workplace-related conduct would permit employers to engage in a range of retaliatory conduct that would undermine the provision's purpose of preserving open access to Title VII's enforcement mechanisms. *Id.* at 64, 126 *S.Ct.* at 2412, 165 *L.Ed.*2d at 357; *see also White v. Burlington N. & Santa Fe Ry. Co.,* 364 *F.*3d 789, 799–800 n. 5 (6th Cir.2004) ("[A]n employer is prohibited [by Title VII] from retaliating in materially adverse ways, regardless of whether the retaliatory acts affect employment." (citation omitted)), *aff'd,* 548 *U.S.* 53, 126 *S.Ct.* 2405, 165 *L.Ed.*2d 345 (2006); *Ray v. Henderson,* 217 *F.*3d 1234, 1242 (9th Cir.2000) ("While some

actions that we consider to be adverse . . . do 'materially affect the terms and conditions of employment,' others . . . do not."); *Aviles v. Cornell Forge Co.*, 183 *F.*3d 598, 606 (7th Cir.1999) (finding § 2000e–3(a) broad enough to prohibit retaliatory actions "that are not ostensibly employment related"); *Wideman v. Wal–Mart Stores, Inc.*, 141 *F.*3d 1453, 1456 (11th Cir.1998) ("Title VII's protection against retaliatory discrimination extends to adverse actions which fall short of ultimate employment decisions."); *Passer v. Am. Chem. Soc'y*, 935 *F.*2d 322, 330–31 (D.C.Cir.1991) (explaining that to exclude non-workplace-related conduct "would be to deny protection to any person who has suffered discharge or termination due to unlawful discrimination").

We take our lead from *Burlington* and from the cited federal cases. Like the Appellate Division, we are satisfied that the Supreme Court's holding that Title VII created a distinct cause of action for retaliatory conduct that need not be related to the workplace applies with equal force to the LAD. That is consistent with the express language of the LAD, as well as the broad remedial purposes underlying it. *Roa, supra*, 402 *N.J.Super.* at 541, 955 *A.*2d 930 (citing *Gerety v. Atl. City Hilton Casino Resort*, 184 *N.J.* 391, 409, 877 *A.*2d 1233 (2005)). In short, the fact that Fernando's insurance cancellation claim is not directly related to his present or future employment is not disqualifying and he may pursue a retaliation claim based thereon.

### B.

Defendants next argue that the insurance cancellation "does not rise to the level necessary to invoke [the] LAD's protection" and thus is not independently actionable. They contend that the cancellation was inadvertent and, in any event, caused no damage to Fernando.[4] Again we disagree, and again

---

4 G & T submitted a certification from its human resources administrator explaining that the premature termination of the health insurance was a clerical error, and was not influenced by Marino or Carlos. Because we view the record

we take our lead from the United States Supreme Court decision in *Burlington*, which discussed what a plaintiff must demonstrate to prove a retaliation claim under Title VII. In addressing the question of "how harmful an act of retaliatory discrimination must be in order to fall within the provision's scope," the Court held that "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have "dissuaded a reasonable worker from making or supporting a charge of discrimination." ' " *Burlington, supra,* 548 *U.S.* at 61, 68, 126 *S.Ct.* at 2411, 2415, 165 *L. Ed.*2d at 355, 359 (quoting *Rochon v. Gonzales,* 438 *F.*3d 1211, 1219 (D.C.Cir.2006) (quoting *Washington v. Ill. Dep't of Revenue,* 420 *F.*3d 658, 662 (7th Cir.2005))). The Court explained that it purposely used the adjective "materially" because

> it is important to separate significant from trivial harms. Title VII, we have said, does not set forth "a general civility code for the American workplace." An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience. The antiretaliation provision seeks to prevent employer interference with "unfettered access" to Title VII's remedial mechanisms. It does so by prohibiting employer actions that are likely "to deter victims of discrimination from complaining to the EEOC," the courts, and their employers. And normally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence.
>
> [*Id.* at 68, 126 *S.Ct.* at 2415, 165 *L.Ed.*2d at 359–60 (citations omitted).]

Tested by that standard, and if proven, Fernando's claim that defendants deliberately and wrongfully terminated his health insurance in retaliation for his having reported the sexual harassment of female employees is unlike the petty slights and minor annoyances referred to in *Burlington*. Viewing the record in a light most favorable to Fernando, as we must, his claim that the insurance cancellation at least in part caused him and his wife to experience "financial problems, damaged their credit rating, subjected them to constant calls from debt collectors, and caused them a tremendous amount of stress and anxiety" is sufficient to

---

in a light most favorable to Fernando, we must, however, assume, without deciding, that the cancellation was retaliatory.

meet the threshold for an independent cause of action under the LAD.

## VII.

Summing up, then, the retaliatory discharge of Fernando is not actionable, but the claim based on the cancellation of his insurance may proceed. However, we note that at trial, Fernando's and Liliana's time-barred claims may be evidential in the proceedings. *N.J.R.E.* 404(b) allows evidence of other "wrongs" to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident when such matters are relevant to a material issue in dispute." *N.J.R.E.* 404(b). Defendants maintain that the cancellation of Fernando's insurance was inadvertent, whereas he argues that it was retaliatory. It will be for the judge, as the gatekeeper, to determine whether the evidence of the untimely claims satisfies the *N.J.R.E.* 404(b) standard and, if the evidence is admitted, it will be for the jury to decide which view is correct, taking into account defendant's termination of Fernando and Liliana and the denial of Liliana's unemployment benefits. A jury could consider that evidence as relevant on the issue of whether the cancellation of Fernando's benefits was inadvertent or an intentional part of defendant's retaliation against him. *See Morgan, supra,* 536 *U.S.* at 113, 122 *S.Ct.* at 2072, 153 *L.Ed.*2d at 122 (noting that Title VII does not bar employee from raising prior time-barred claims as "background evidence in support of a timely claim").

## VIII.

The judgment of the Appellate Division is affirmed in part and reversed in part. It is affirmed insofar as it declared Fernando's retaliation claim based on the insurance cancellation to be actionable and subject to a discovery rule analysis. It is reversed insofar as it recognized the applicability of the continuing violation theory in these circumstances. The matter is remanded to the trial judge for proceedings consistent with this opinion.

*For affirmance in part/reversal in part/remandment*—Chief Justice RABNER and Justices LONG, LaVECCHIA, ALBIN, WALLACE, RIVERA–SOTO and HOENS—7.

*Opposed*—None.