**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2726-24

MICHAEL ACEY,

    Plaintiff-Appellant,

v.

CITY OF PATERSON,
MANUEL OJEDA, and WILLIAM
RODRIGUEZ,

    Defendants-Respondents.

_____

Submitted March 4, 2026 – Decided April 2, 2026

Before Judges Gummer and Vanek.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Docket No. L-1866-22.

Smith & Schwartzstein, LLC, attorneys for appellant (Andrew B. Smith, on the briefs).

Gordon Rees Scully Mansukhani, LLP, attorneys for respondents (Keith J. Murphy and Deanne J. Lowden, of counsel and on the brief).

PER CURIAM

Plaintiff Michael Acey appeals from a February 10, 2025 order granting summary judgment to the City of Paterson (City), Manuel Ojeda, and William Rodriguez, and from an April 11 order denying his motion for reconsideration. We affirm.

I.

We glean the salient facts from the motion record, viewed in the light most favorable to plaintiff. See Christakos v. Boyadjis, 262 N.J. 447, 462 (2026). The City hired plaintiff as a Department of Public Works (DPW) Laborer in 1998 and promoted him to a supervisor position in January 2012. Ojeda was the Assistant Director of DPW, and Rodriguez was a DPW General Supervisor.

In January 2017, at plaintiff's request, he was transferred to Supervisor of the night-shift so that he could work a second job for another employer. Plaintiff did not have daily interaction with Ojeda and Rodriguez as the night-shift Supervisor because their working hours differed. Before plaintiff became the night-shift Supervisor, Rodriguez expressed that he had wanted plaintiff to work provisionally as a General Supervisor in his absence.

In May 2017, Rodriguez was promoted to the position of Deputy Director of DPW. Prior to Rodriguez's promotion, plaintiff heard through a conversation with another employee that City employee Michael Jackson would likely be

provisionally appointed to the General Supervisor position once Rodriguez was promoted.

Plaintiff contends he told Rodriguez he was interested in being appointed to the General Supervisor position. Plaintiff alleges Ojeda told him the General Supervisor position would be filled based on seniority and that plaintiff would likely be appointed as the most senior employee.

Plaintiff states he became aware that Jackson had begun performing General Supervisor duties on Rodriguez's promotion sometime between 2017 and 2018. Because Jackson had assumed the General Supervisor's responsibilities, he petitioned the New Jersey Civil Service Commission (CSC) to obtain the permanent title of General Supervisor. The CSC granted Jackson's request and instructed the City to either appoint him as General Supervisor or remove those duties from him. In response to the CSC's directive, the City appointed Jackson to the General Supervisor position on a provisional basis.

Plaintiff alleges his subsequent requests to discuss the General Supervisor position and his employment generally were met with sexual innuendo by Rodriguez and Ojeda. On March 30, 2017, plaintiff went to Ojeda's office to discuss the decision not to give him the General Supervisor position, and Ojeda said, "baby you can have whatever you want if you do what you gotta do," and

3

called plaintiff his "boy toy from day one." On April 5, 2017, plaintiff went to Rodriguez's office to ask for a raise, and Rodriguez instructed Ojeda "to put his penis on [p]laintiff's face to see if it turns red." Rodriguez allegedly also referenced "skin problems" on plaintiff's face that same day.

On August 14, 2017, "[p]laintiff was told that he couldn't get [the] [G]eneral [S]upervisor position because . . . Rodriguez was provisional in Ojeda's position." Rodriguez told plaintiff during that conversation he had seen him doing cheerleading moves at plaintiff's daughter's cheer practice. Ojeda asked plaintiff, "How is your butthole?" and then asked plaintiff about his knee. Rodriguez then said, "We have to get him a new butthole like Missy Elliot."

At that time, plaintiff also told Rodriguez and Ojeda he wanted to return to the day shift in order to be eligible to obtain a General Supervisor position, and Rodriguez responded, "alright sexy." However, plaintiff then learned from Ojeda and Rodriguez he could not be transferred because the City had already hired two employees for the day-shift Supervisor position and no one else wanted his position of night-shift Supervisor.

The next incident did not occur until 2019. On April 2, 2019, Ojeda physically pushed up against plaintiff's backside, breathed on plaintiff's neck, and stopped when plaintiff "threw an elbow" and told him to stop. On September

4

5, 2019, Rodriguez told other male DPW employees that he "only sees . . . [p]laintiff playing with little boys."  Rodriguez also said plaintiff "fill[s] their butt with butter" and everyone in the room laughed.

On December 10, 2019, plaintiff discussed with a coworker about attending a "demolition class" with "other individuals" and stated he felt "discriminated against regarding his exclusion from that class because he possesses a heavy equipment license."  However, the class was never held.

On January 6, 2020, plaintiff met with Rodriguez about his "grievance that he had not been getting overtime work for snow removal, despite the fact that he had done that work for numerous years prior to [2020]."  Rodriguez also told plaintiff "he would get access to the GPS," but plaintiff never received access. He also did not receive "any company emails."

Over a year and a half later, plaintiff filed a July 20, 2021 Employee Complaint Form (ECF).  In the ECF, plaintiff alleged that on April 3, 2021, he "was on the phone with . . . [Ojeda]" discussing "a hole in the ground" plaintiff had been requested to investigate.  Ojeda asked plaintiff "to take a picture of [his] butthole and send" it to him.  Ojeda told plaintiff he was joking, and the two of them continued to carry out the purpose of the work call.  Plaintiff alleged in the ECF that incident was not the first time Ojeda had "said sexual things to

[him]."  In response to the ECF question regarding whether he feared retaliation, plaintiff wrote:  "Yes[,] I am afraid that . . . Rodriguez or . . . Ojeda will [r]etaliate against [m]e because they are my bosses and Directors of [DPW]."

The City investigated the allegations in plaintiff's ECF and found his claims unsubstantiated.  Plaintiff asserts in his merits brief that he had provided the City's investigator with a "green flash drive" containing voicemail recordings of Ojeda corroborating his ECF.  The investigator, however, stated in his report plaintiff had not provided the "flash drive" to him before he wrote his report.[1]

A week after plaintiff filed the ECF, he filed a union grievance regarding the City's failure to appoint him as a General Supervisor.  The outcome of that grievance is not detailed in the record.

Plaintiff contends defendants retaliated against him after he filed the ECF.  On January 6, 2022, plaintiff met with Ojeda and Rodriguez about "not receiving a shift for snow removal or overtime pay" and not being appointed to the General Supervisor position.  On an unspecified date, plaintiff went to Ojeda's office where he, Ojeda and Rodriguez discussed the General Supervisor position.  At that meeting, Ojeda said he would "blow up [plaintiff's] a[**]hole so bad" and

---

[1]  Nor was any such evidence provided to the trial court or on appeal.

spoke generally in crude language, stating he had a "PhD in f[******] p[***]y," without referencing plaintiff.[2]

On July 28, 2022, plaintiff filed a three-count complaint against defendants under the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -50, for sexual harassment hostile work environment (count one), quid pro quo sexual harassment (count two), and retaliation (count three). Plaintiff alleged he was subjected to ongoing sexual harassment through his interactions with Rodriguez and Ojeda while working for the DPW.

On January 10, 2025, the judge entered an order granting defendants' summary judgment motion and dismissing plaintiff's complaint in its entirety, accompanied by a written statement of reasons. The judge first held plaintiff's claims were time-barred. The judge found there were "no issues of material facts as to when the alleged discriminatory actions occurred" and concluded only the April 2021 act occurred within two years prior to June 28, 2022, when plaintiff filed his complaint. The judge rejected plaintiff's argument that the alleged acts from March 2017 until April 2021 established a continuing violation under the case law because they were "spread out over four years" and "were

_____

[2] Plaintiff alleges he produced videos in discovery containing evidence of some of these events. However, those videos do not appear to have been provided to the trial judge and were not provided on appeal.

clearly isolated and sporadic." After citing the prevailing law, the judge found the "discrete act" that had triggered plaintiff's complaint "was the failure to receive a promotion in 2017." Thus, the judge concluded plaintiff's claims were untimely under LAD's two-year statute of limitations.

Notwithstanding this finding, the judge also addressed the substance of plaintiff's LAD claims and found they were not actionable under prevailing law. Relying on the well-established four-factor test announced in Shepherd v. Hunterdon Developmental Center, 174 N.J. 1, 24 (2002), the judge assumed the first factor—plaintiff's protected status—had been established and found plaintiff had failed to satisfy factors two through four because the complained of conduct was not "severe or pervasive" enough for a reasonable person to view the work environment as hostile. Thus, the judge concluded plaintiff's sexual harassment hostile work environment claim failed.

The judge also rejected plaintiff's retaliation claim, finding plaintiff's claim was based on a reversed timeline of alleged retaliatory conduct prior to plaintiff filing his ECF. Therefore, the judge concluded plaintiff had failed to establish a prima facie claim of retaliation under the well-settled McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), framework.

Plaintiff moved for reconsideration. The trial judge entered an order

denying reconsideration, orally reconfirming the ruling that the continuing-violation doctrine was inapplicable and the undisputed facts warranted granting defendants' summary judgment motion on plaintiff's LAD claims, even if they were not time-barred under the two-year statute of limitations.

Plaintiff argues on appeal the judge erred when he found plaintiff's claims time-barred and made factual determinations that led to premature dismissal of his LAD hostile work environment and retaliation claims at the summary judgment stage.[3]

## II.

We review a trial court's grant of summary judgment de novo, applying the same standard used by the trial court. Samolyk v. Berthe, 251 N.J. 73, 77 (2022). We also review the application of a statute of limitations de novo. Chipola v. Flannery, 261 N.J. 460, 467 (2025).

A summary judgment motion should be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a

---

[3] Plaintiff does not contest the dismissal of his quid pro quo sexual harassment LAD claim (count two) on appeal.

matter of law." R. 4:46-2(c).  A court should grant summary judgment when "the evidence 'is so one-sided that [the moving] party must prevail as a matter of law.'"  Rios v. Media Pharm, Inc., 247 N.J. 1,13 (2021) (quoting Petro-Lubricant Testing Labs., Inc. v. Adelman, 233 N.J. 236, 257 (2018)).

The key inquiry is whether the evidence presented, when viewed in the light most favorable to the non-moving party, "[is] sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." C.V. v. Waterford Twp. Bd. of Educ., 255 N.J. 289, 305 (2023) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)).  In deciding "whether a genuine issue of material fact exists, the trial court must 'draw[] all legitimate inferences from the facts in favor of the non-moving party.'" Friedman v. Martinez, 242 N.J. 449, 472 (2020) (alterations in original) (quoting Globe Motor Co. v. Igdalev, 225 N.J. 469, 480 (2016)).

Our review of an order granting summary judgment does not contemplate weighing the evidence "but [requires us] to determine whether there is a genuine issue for trial.'"  Rios, 247 N.J. at 13 (quoting Brill, 142 N.J. at 54).  We accord "no special deference to the trial court's legal conclusions."  Birmingham v. Travelers N.J. Ins. Co., 475 N.J. Super. 246, 255 (App. Div. 2023).

10

We "review a trial court's decision on a motion for reconsideration under an abuse of discretion standard." In re Est. of Jones, 477 N.J. Super 203, 216 (App. Div. 2023). "An abuse of discretion 'arises when a decision is made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2015) (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002) (internal quotation marks omitted).

## III.

We discern no error with the judge's rejection of the continuing violation doctrine and grant of summary judgment to defendants, dismissing counts one and three of plaintiff's complaint as time-barred under LAD's two-year statute of limitations.

"The statute of limitations for LAD claims is two years." Roa v. Roa, 200 N.J. 555, 556 (2010); N.J.S.A. 2A:14–2(a). Although this two-year limitation exists, the judicially created continuing-violation doctrine "has developed as an equitable exception to the statute of limitations." Ibid. (quoting Bolinger v. Bell Atl., 330 N.J. Super. 300, 306 (App. Div. 2000)). Under the doctrine, when an individual has experienced a "continual, cumulative pattern of tortious conduct, the statute of limitations does not begin to run until the wrongful action ceases."

11

Ibid. (internal quotation marks omitted). The conduct becomes actionable because of its "continuous, cumulative, synergistic nature." Ibid. (internal quotation marks omitted). The doctrine, however, "does not permit . . . the aggregation of discrete discriminatory acts for the purposes of reviving an untimely act of discrimination that the victim knew or should have known was actionable." Ibid.

We are unconvinced the judge erred in finding plaintiff's failure-to-promote retaliation claim was untimely. Under Shepherd and its progeny, the failure to receive a promotion is a "discrete" discriminatory act, falling outside the ambit of the continuous-tort doctrine, placing an employee on notice of the existence of their claim and the need to file it. Shepherd, 174 N.J. Super. at 19; Roa, 200 N.J. at 569; Alexander v. Seton Hall Univ., 204 N.J. 219, 230 (2010). Therefore, because plaintiff did not file his retaliation claim within LAD's two-year statute of limitations period, count three of plaintiff's complaint is time-barred.

Plaintiff's retaliation claim is not saved by the discovery rule because the undisputed facts establish he knew Jackson had assumed the General Supervisor's responsibilities in Rodriguez's absence in 2017 and knew in 2017-2018 Jackson would be provisionally appointed as General Supervisor once

Rodriguez was promoted. The discovery rule is a doctrine that "'postpon[es] the accrual of a cause of action' so long as a party reasonably is unaware either that he has been injured, or that the injury is due to the fault or neglect of an identifiable individual or entity." Roa, 200 N.J. at 571-72 (rejecting the rule's application in holding an employee cannot seek to toll LAD's two-year statute of limitations through "willful blindness"). It is an equitable doctrine designed to combat "the fundamental unfairness of barring claims of which a party is unaware." Ibid.

Plaintiff's argument on appeal that he did not "fully" know the General Supervisor position was unavailable until 2021 is contradicted by the undisputed facts in the record. We discern no equitable basis for invocation of the discovery rule because plaintiff was told in 2017 that Jackson would likely be appointed to the General Supervisor position and plaintiff knew in 2017-2018 Jackson had undertaken the General Supervisor duties.

Plaintiff argues on appeal "he was subject to a hostile work environment due to the repeated comments made to him over approximately four . . . years," from 2017 to 2021, regardless of the alleged failure to promote him to the position of General Supervisor in 2017. Plaintiff asserts the continuing violation doctrine applies because alleged harassing acts of a similar nature and by the

13

same actors occurred during the two years before he had filed his complaint.

Plaintiff's sexual harassment hostile work environment claim is also not subject to the continuing violation doctrine and, therefore, is time-barred. The comments plaintiff alleges occurred in 2017 and 2019 are not of a "continual, cumulative, synergistic nature" necessary to warrant application of the continuing violation doctrine's application. Roa, 200 N.J. at 566. As the judge found, the comments were sporadic, unspecific, and frequently did not involve sexual innuendo. Although the comments were vulgar, they did not always constitute the "same type of discrimination," were infrequent, and sometimes were not directed towards plaintiff. Schiavo v. Marina Dist. Dev. Co., 422 N.J. Super. 346, 372 (App. Div. 2015).

Contrary to plaintiff's assertions, the acts do not constitute "a pattern or series of acts, any one of which may not be actionable as a discrete act, but when viewed cumulatively constitute a hostile work environment." Shepherd, 174 N.J. at 21. Instead, the alleged acts are only "the occurrence of isolated or sporadic acts" of discrimination. Bolinger, 330 N.J. Super. at 307. Thus, the judge properly dismissed count one of plaintiff's complaint as time-barred.

IV.

Notwithstanding that plaintiff's claims are time-barred, we are also unconvinced the judge's order granting defendants' summary judgment motion on the merits of his LAD claims was improvidently entered, as it was predicated on prevailing law applied to the undisputed facts in the record viewed in the light most favorable to plaintiff.

In order to sustain a hostile work environment claim, a plaintiff must show the alleged conduct:  "(1) would not have occurred but for the employee's protected status[] and was (2) severe or pervasive enough to make a (3) reasonable person believe that (4) the conditions of employment have been altered and that the working environment is hostile or abusive."  Shepherd, 174 N.J. at 24.  "Severe or pervasive" conduct is determined by considering "whether a reasonable person would believe that the conditions of employment have been altered and that the working environment is hostile."  Ibid.  Therefore, the second through fourth prongs are somewhat interdependent.  Ibid.

We discern no error in the judge's conclusion that plaintiff failed to demonstrate the requisite "severe or pervasive" conduct to support his hostile work environment claim under prongs two through four of Shepherd's four-part test.  Plaintiff's proffered evidence demonstrated defendants rarely interfaced

A-2726-24

with him over the five-year period after his request to transfer to the night-shift Supervisor position was granted in 2017 because they worked different hours. The record demonstrates plaintiff continued his job duties regularly with no alteration to his employment. The record also reflects infrequent comments by defendants—at times nearly two years without occurrence—and with some dialogue entirely devoid of sexual innuendo and concerning only work-related issues. Therefore, plaintiff's hostile work environment claim was properly dismissed on summary judgment.

We also discern no error in the judge's rejection of plaintiff's retaliation claim as a factual impossibility because the comments defendants made to plaintiff post-dating Jackson's appointment as General Supervisor "could not have had any effect on a promotion or raise that plaintiff did not receive in 2017." Although employers cannot retaliate against employees who seek to enforce LAD, to establish a prima facie case of retaliation under LAD, a plaintiff must show "1) he was engaged in a protected activity known to the defendant; 2) he was thereafter subjected to an adverse employment decision by the defendant; and 3) there was a causal link between the two." Romano v. Brown & Williamson Tobacco Corp., 284 N.J. Super. 543, 548-49 (App. Div. 1995). An "adverse employment decision" includes an "employee's loss of status, a

16

clouding of job responsibilities, diminution in authority, disadvantageous transfers or assignments, and toleration of harassment by other employees." Mancini v. Twp. of Teaneck, 349 N.J. Super. 527, 564 (App. Div. 2002).

The record establishes plaintiff knew Jackson was performing the duties of General Supervisor and would likely be appointed to the position in 2017-2018. Although plaintiff complains he was retaliated against by being deprived of the promotion in 2017, the LAD-actionable conduct he alleges all post-dated that event. Thus, plaintiff's failure-to-promote retaliation claim was properly dismissed on summary judgment.

V.

Because plaintiff asserted the same substantive arguments identified and analyzed by the judge on summary judgment, plaintiff's reconsideration motion did not fall within the narrow corridor for which reconsideration is appropriate. See Triffin v. SHS Grp., 466 N.J. Super. 460, 466 (App. Div. 2021); see also Cummings v. Bahr, 295 N.J. Super. 374, 384 (App. Div. 1996) (holding a motion for reconsideration is appropriate in "those cases . . . in which either 1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence")). Thus, we

17

discern no abuse of discretion in the judge's denial of plaintiff's reconsideration motion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division