**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4722-16T1

DANA S. REGISTER,

     Plaintiff-Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS and
LEON WILLIAMS,

     Defendants-Respondents.

_____

> Argued December 18, 2018 – Decided January 28, 2019
>
> Before Judges Fisher and Firko.
>
> On appeal from Superior Court of New Jersey, Law Division, Hunterdon County, Docket No. L-0303-16.
>
> Luretha M. Stribling argued the cause for appellant.
>
> Agnes I. Rymer, Deputy Attorney General, argued the cause for respondents (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Joel Clymer, Deputy Attorney General, on the brief).

PER CURIAM

Plaintiff Dana Register appeals from the trial court's order granting summary judgment dismissal of her complaint alleging gender discrimination, hostile work environment, and aiding and abetting under the New Jersey Law Against Discrimination, N.J.S.A. 10:5-12. Having reviewed plaintiff's arguments in light of the facts and applicable principles of law, we reverse and remand.

We derive the following facts from the record, extending to plaintiff all favorable inferences. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). On December 2, 2013, plaintiff, a Department of Corrections (DOC) employee, was terminated from her position as a corrections officer at Mountainview Youth Correctional Facility (MYCF) for conduct unbecoming an employee and undue familiarity with an inmate. Plaintiff appealed from the disciplinary actions to the Office of Administrative Law (OAL) and Civil Service Commission (CSC), who recommended her termination for cause on the grounds of severity and the impropriety of her relationship with an inmate. We affirmed the CSC's determination that plaintiff was properly terminated and that

she "participated in a highly inappropriate relationship with an inmate over an extended period of time, and went to great lengths to conceal the relationship."[1]

Within two years of her termination, plaintiff timely filed a complaint,[2] as a self-represented litigant, in the Law Division, asserting that her termination was based on gender and race discrimination, a hostile work environment, and alleging that defendant, Leon Williams, individually aided and abetted the DOC's wrongful conduct. Plaintiff claims that Williams instigated an internal investigation against her, motivated by racial bias.

Plaintiff is an African-American woman. According to her complaint, Williams and the administrators at MYCF are Caucasian. On October 8, 2013, she admitted to having a relationship with an inmate during a DOC Special Investigation Division (SID) interview. That same day, she was suspended pursuant to a Preliminary Notice of Disciplinary Action (PNDA), and later terminated on December 2, 2013, pursuant to a Final Notice of Disciplinary Action (FNDA). The Administrative Law Judge (ALJ) rejected plaintiff's claim

---

[1] See In re Register, No. A-4323-13 (App. Div. Apr. 12, 2016) (slip op. at 12).

[2] The initial complaint was filed on October 9, 2015. A substitution of attorney was filed on December 14, 2015. A prior judge denied defendants' motion to dismiss the complaint pursuant to Rule 4:6-2(e) on January 22, 2016, and ordered plaintiff to amend the complaint within twenty-five days. A first amended complaint and jury demand was filed on February 16, 2016.

that Williams was involved with the investigation and heard – but did not adjudicate – her allegations based on discrimination.

During her testimony before the ALJ, plaintiff testified that Williams used racial slurs and that he disliked people of color. She claimed that discrimination and insults occurred daily in the workplace, and that DOC prisons housing largely African-American inmates were referred to as "zoos" and "plantations." Officers assigned to those prisons were called "zookeepers," and the inmates were referred to as "animals." Plaintiff also testified that Williams referred to African-Americans officers as "nigger[s]," and his reprehensible conduct was well known to DOC administrators working at the prisons, yet they failed to intercede and stop his contumacious behavior.

According to plaintiff, Williams made it clear that it was his "goal" to get rid of African-American officers. She further contended that the investigation was tainted by racial bias because of William's involvement, undertaken at his own initiative, to "stalk" her and report to the SID. She alleged that he had no training or authorization to act in this capacity, and he would "switch" vehicles with those used by other officers when following her to avoid recognition. Williams "bragged" about his surreptitious actions after plaintiff was suspended, and he boasted about how "he had gotten rid of that nigger," as per her

4

contention. A Sergeant Vargas ostensibly reported Williams' miscreant behavior, including his rude and hateful epithets, to administrators, but no reprimand or disciplinary action ensued.

The ALJ found that Williams did not participate in the DOC's investigation, and that plaintiff's testimony constituted inadmissible hearsay. The ALJ disagreed with plaintiff that her relationship with the inmate was simply a friendship, concluding instead that there was "an intimacy greater than the mere 'friendliness' claimed by [her]." Further, the ALJ found that "her reckless disregard bears decisively on the appropriateness of removal as a penalty."

In affirming the CSC, which adopted the ALJ's decision, we agreed that "[t]he record indisputably reveals that [plaintiff] engaged in a highly inappropriate relationship with an inmate, and in doing so recklessly disregarded known rules and regulations." See In re Register, slip op. at 11. We did not address any discrimination-related claims since none were before us.

Nonetheless, the trial judge held that collateral estoppel barred plaintiff's civil claims, concluding:

> the [i]ssues raised in this Superior Court action are identical to the issues raised in the prior administrative proceedings. The First Count of [plaintiff's] [c]omplaint alleges, among other things, that Williams

acted improperly in the events leading to her termination. The record shows that [plaintiff] previously raised these allegations in the administrative proceedings. As in Winters,[3] [plaintiff] raises the argument that the issues in each forum are not identical. See [] id. at 84-85. [Plaintiff] claims that the administrative proceedings only concerned the issue of "just cause" for her termination. However, as in Winters, where the plaintiff raised the issue of retaliation, [plaintiff] raised racial discrimination as a central theme of her defense. Id. at 88.

Second, the lengthy procedural history shows that the circumstances of [plaintiff's] termination have been heavily litigated. The ALJ, Joseph Lavery, and the Appellate Division both wrote detailed decisions that thoroughly explored the facts of this case. Both found that [plaintiff's] termination was lawful and not discriminatory because she had "violat[ed] those civil service rules and department regulations cited by DOC in the PNDA and FNDA. Public safety concerns and the good order of the facility justify termination." In the Matter of Dana S. Register, No. CSR 17778-13 2014-1551, at *16 (OAL April 7, 2014).

The trial judge determined "all five elements of collateral estoppel have been satisfied . . . ." He also found that the doctrine of estoppel applied to plaintiff, a "party to all of the prior administrative proceedings[,]" in dismissing her claims of unlawful, race-based discrimination under the LAD (counts one and four).

---

[3] Winters v. N. Hudson Reg'l Fire and Rescue, 212 N.J. 67, 85 (2012).

Next, the trial judge concluded that plaintiff's race and gender discrimination, as well as her hostile work environment claims, were barred by the LAD's two-year statute of limitations, stating:

> For statute of limitations purposes, termination is considered a "discrete" discriminatory act. Shepherd v. Hunterdon Dev. Ctr., 174 N.J. 1, 19 (2002) (citing AMTRAK v. Morgan, 536 U.S. 101, 114 (2002)). Discrete acts are different from hostile work environment claims. [Ibid.] A discrete act occurs on the day that it happens. [Ibid.] Our Supreme Court in Shepherd drew a distinction between the two types of claims:
>
>> Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct. The "unlawful employment practice" therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own. Such claims are based on the cumulative effect of individual acts.
>>
>> [Id. at 19-20 (citing Morgan, 536 U.S. at 114-118).]
>
> Here, [plaintiff] filed her initial complaint with the court on October 9, 2015. Both parties agree that [plaintiff] last worked at MYCF on October 8, 2013. [Plaintiff] notes that she was served a PNDA on October 11, 2013, and suspended from employment. Afterwards, she interacted with personnel at Human Resources and some supervisory staff. However, there

A-4722-16T1

is no evidence before the court that she ever returned to work. As defendants persuasively point out, a plaintiff cannot suffer from a hostile work environment or unlawful discrimination if she is not present in the work environment. [Plaintiff] does not allege any discriminatory incidents after October 8, 2013. Thus, all of [plaintiff's] allegations, unrelated to her termination, as set forth in the [s]econd, [t]hird, and [f]ourth [c]ounts, are barred by LAD's two-year statute of limitations.

Finally, the trial judge concluded that plaintiff's "aiding and abetting claims fail for the same reasons as her other claims," and he dismissed them as "moot."

Plaintiff argues that: (1) the trial court erred by finding her alleged adverse employment action was barred by the two-year statute of limitations; (2) summary judgment was prematurely granted because plaintiff was not provided with discovery responses served on defendants and no depositions were conducted; (3) collateral estoppel was wrongfully applied; (4) improper consideration was given to her claim that Williams had no authority to investigate her and turn over his tainted findings to SID; and (5) the trial judge failed to apply the controlling law on discrimination, hostile work environment, and aiding and abetting, and that she satisfied the criteria for consideration of the cumulative effect of defendants' actions bearing on her claims.

# I.

We review a ruling on a motion for summary judgment de novo, applying the same standard governing the trial court. Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co., 224 N.J. 189, 199 (2016) (citing Mem'l Props., LLC, v. Zurich Am. Ins. Co., 210 N.J. 512, 525 (2012)). Thus, we consider, as the trial judge did, "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 406 (2014) (quoting Brill, 142 N.J. at 540). If there is no genuine issue of material fact, we must then "decide whether the trial court correctly interpreted the law." DepoLink Court Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (quoting Massachi v. AHL Servs., Inc., 396 N.J. Super. 486, 494 (App. Div. 2007)).

We review issues of law de novo and accord no deference to the trial judge's legal conclusions. Nicholas v. Mynster, 213 N.J. 463, 478 (2013). For mixed questions of law and fact, we give deference to the supported factual findings of the trial court, but review "de novo the lower court's application of

any legal rules to such factual findings." State v. Pierre, 223 N.J. 560, 577 (2015) (quoting State v. Harris, 181 N.J. 391, 416 (2004)).

Plaintiff first argues that the trial judge erred by determining that her LAD claims were barred by the two-year statute of limitations because her complaint was filed within two years of her termination. We agree. "Determining when the limitation period begins to run depends on when the cause of action accrued, which in turn is affected by the type of conduct a plaintiff alleges to have violated the LAD." Alexander v. Seton Hall Univ., 204 N.J. 219, 228 (2010). "Discriminatory termination and other similar abrupt, singular adverse employment actions that are attributable to invidious discrimination, prohibited by the LAD, generally are immediately known injuries, whose two-year statute of limitations period commences on the day they occur." Ibid. (citing Roa v. Roa, 200 N.J. 555, 569 (2010)). Discrete acts are those "such as termination, failure to promote, denial of transfer, or refusal to hire . . . ." Morgan, 536 U.S. at 114.

With respect to hostile work environment claims, the continuing violation theory, a judicially-created doctrine that serves as an equitable exception to the statute of limitations in LAD cases in New Jersey, may apply. See Bolinger v. Bell Atl., 330 N.J. Super. 300, 306 (App. Div. 2000). When an employee

experiences a "continual, cumulative pattern of tortious conduct, the statute of limitations does not begin to run until the wrongful act ceases." Wilson v. Wal-Mart Stores, 158 N.J. 263, 272 (1999).

The court must address two questions:

> First, have plaintiffs alleged one or more discrete acts of discriminatory conduct by defendants? If yes, then their cause of action would have accrued on the day on which those individual acts occurred. Second, have plaintiffs alleged a pattern or series of acts, any one of which may not be actionable as a discrete act, but when viewed cumulatively constitute a hostile work environment? If yes, then their cause of action would have accrued on the date on which the last act occurred, notwithstanding "that some of the component acts of the hostile work environment [have fallen] outside the statutory time period."
>
> [Shepherd, 174 N.J. at 21 (alteration in original) (quoting Morgan, 536 U.S. at 117).]

The continuing violation theory may be applied to a discrete act, such as termination. "Each discrete discriminatory act starts a new clock for filing charges alleging that act." Roa, 200 N.J. 555, 567 (2010) (quoting Morgan, 536 U.S. at 113). "Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim." Ibid. (quoting Morgan, 536 U.S. at 113). This analysis was not undertaken by the trial judge, warranting reversal.

11

The record supports plaintiff's contention that summary judgment as to the statute of limitations was inappropriate because an issue of material fact exists as to the purported discriminatory impetus of her termination. Methodically, plaintiff alleges a pattern of discriminatory conduct, such as unauthorized investigations, stalking, and racially based comments, culminating in her termination – the final, discrete act of discrimination that vested her claim and triggered the running of the statute of limitations period.

II.

Plaintiff next argues that she was deprived of discovery that may have supported her contentions and defeated the summary judgment motion. Defendants' stance that plaintiff has failed to provide specific dates or proof that the alleged interactions took place is belied by the fact they failed to serve answers to interrogatories, turnover requested documents, or engage in depositions. Indeed, defendants simply argue that plaintiff did not provide dates when she "discovered" the effects of alleged discrimination. At oral argument, counsel for defendants represented that their discovery responses were three months overdue. Unless there is discovery exchanged, there can be no determination as to whether plaintiff's claims are timely, accrued, tolled, or otherwise actionable.

12

## III.

Next, plaintiff argues that the trial judge erred in finding that collateral estoppel barred her discrimination claims and that he mistakenly interpreted the holding in <u>Winters</u> by giving preclusive effect to her claims. The trial judge held that plaintiff's civil claims "are identical to the issues raised in the prior administrative proceeding," and allegations that Williams "acted improperly in the events leading to her termination" were "heavily litigated" before the ALJ and addressed by this court. We disagree.

In <u>Winters</u>, the plaintiff was a public employee who was terminated and raised retaliation as a defense through the same administrative process as this matter. After his defenses were rejected, he filed a complaint in the Law Division alleging violations under the Conscientious Employee Protection Act (CEPA). The Supreme Court held that Winters was collaterally estopped from re-litigating the retaliation issue since he raised it as a defense and litigated same at his administrative hearing. Collateral estoppel is an equitable principle that arises "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether

on the same or a different claim." Winters, 212 N.J. at 85 (alteration in original) (citing Restatement (Second) of Judgments § 27 (1982)).

The party asserting the bar must show that:

> (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.
>
> [Ibid. (quoting Oliveri v. Y.M.F. Carpet, Inc., 186 N.J. 511, 521 (2006)).]

"Fundamental to the application of estoppel is an assessment of considerations such as 'finality and repose; prevention of needless litigation; avoidance of duplication; reduction of unnecessary burdens of time and expenses; elimination of conflicts, confusion and uncertainty; and basic fairness.'" Ibid. (quoting Oliveri, 186 N.J. at 522.)

"In public employee discipline matters, the public interest in the finality of the litigated disciplinary matter must weigh in the equitable application of estoppel principles, for it is an unnamed party in interest to the efficient and fair resolution of civil service discipline." Id. at 86. Winters stands for the proposition that:

[I]f in a disciplinary proceeding, an "employee raises a claim that employer retaliation at least partially motivated the decision to bring the charge or the level of discipline sought, then both the employee and the employer must live with the outcome, including its potential preclusive effect on the related employment-discrimination litigation . . . . [I]t is not unfair to require [plaintiff] to present the defense that he raised in the administrative forum and to accept the consequences of his strategy."

[Wolff v. Salem County Correctional Facility, 439 N.J. Super. 282, 294 (App. Div. 2015) (quoting Winters, 212 N.J. at 73).]

The dispositive fact in Winters was the plaintiff's "failure to make his case on a claim he raised before the Commission." Winters, 212 N.J. at 91. The Court was:

[F]ully convinced that the ALJ assessed his claim of retaliation, to the extent it was supported, when he rendered his findings and conclusion. That it was not addressed specifically is not fatal to the analysis in this particular case, where everything Winters pointed to, or at, was supposedly evidence of overall animosity and retaliatory bias by [defendant].

[Ibid.]

Unlike Winters, plaintiff argued a racial animus in the steps taken by the DOC at her administrative hearing, but our careful review of the record does not reveal that the ALJ, or anyone else in the administrative process, actually

determined that defendants did not discriminate against her on the basis of race, gender, or anything else. In its decision, the OAL stated:

> Officer Vaillegas addressed a factual issue introduced in plaintiff's defense: the alleged behavior of another SCO, [Williams]. Officer Vaillegas stated that he had overhead Williams, who was white, using racist language in describing black officers. He referred to them as "niggers." With respect to [plaintiff], Officer Vaillegas stated that [Williams] described to him with satisfaction how he, Williams, had personally investigated and caused the firing of [plaintiff]. According to Correction Officer Vaillegas, [Williams] said he had supplied to SID information concerning money orders and letters, and had gone so far as to follow [plaintiff] from Phillipsburg to the Easton post office involved. Officer Vaillegas believed [Williams] was projecting himself as a one-man investigating entity, which is prohibited by DOC. Because of this, and because of [plaintiff's] discriminatory language, he reported his interactions with [Williams].

This is a summary of Vaillegas' testimony and not an adjudication on the merits on the claims presented by plaintiff in her Law Division action. Therefore, the trial judge erred by stating the issues were "identical." Because collateral estoppel applies to issues previously raised and decided, the amended complaint was improvidently dismissed.

IV.

Plaintiff seeks to change venue back to Warren County where the complaint was initially filed, or alternatively, Mercer County because DOC is

16

headquartered there. We see no merit to plaintiff's argument. No showing has been made that "a fair and impartial trial could not be had" in Hunterdon County. See Pressler & Verniero, Current N.J. Court Rules, cmt. on R. 4:3-3 (2019). In light of our decision, these is no reason to address the other points raised by plaintiff.

In conclusion, we reverse the order dismissing the Law Division amended complaint and reinstate the matter for further proceedings. The trial court shall conduct a case management conference within thirty days to address discovery issues. This matter shall remain venued in Hunterdon County. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION