**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2675-23

MICHAEL COE,

     Plaintiff-Appellant,

v.

TRENTON BOARD OF
EDUCATION, TRENTON
PUBLIC SCHOOL DISTRICT,
MONIQUE HARVEY,
individually and in her official
capacity, JAYNE HOWARD,
individually and in her official
capacity, and LISSA JOHNSON,
individually and in her official
capacity,

     Defendants-Respondents.

_____

Argued March 11, 2025 – Decided May 20, 2025

Before Judges Gilson, Firko, and Bishop-Thompson.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-0227-19.

Linda J. Niedweske argued the cause for appellant (Niedweske Law Firm, LLC, attorneys; Linda J. Niedweske and Jessica L. Mariconda, on the briefs).

Nicholas J. Repici argued the cause for respondents (Lenox, Socey, Formidoni, Giordano, Lang, Carrigg & Casey, LLC, attorneys; Nicholas J. Repici, on the brief).

PER CURIAM

Plaintiff Michael Coe sued his employer, defendants the Trenton Board of Education and Trenton Public School District (collectively, the Board), as well as three school administrators, defendants Monique Harvey, Jayne Howard, and Lissa Johnson. Plaintiff alleged that defendants had retaliated against him in violation of the New Jersey Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to -14. He appeals from orders granting summary judgment to defendants and denying his motion for reconsideration. Because most of plaintiff's claims were time-barred by CEPA's one-year statute of limitations, and because he failed to establish any adverse employment retaliation during the statutory period, we affirm.

I.

We discern the facts from the summary judgment record, viewing them in the light most favorable to plaintiff, who was the non-moving party. See Memudu v. Gonzalez, 475 N.J. Super. 15, 18-19 (App. Div. 2023).

Plaintiff is employed by the Board as a teacher for students with special needs. In addition to his teaching responsibilities, plaintiff previously performed extra duty assignments, including AM/PM duty supervision and home instruction. He also served as lead teacher for the extended school year and summer enrichment programs, as well as bus coordinator.

Plaintiff has worked for the Board for over twenty years. In 2004, he received tenure. He has a master's degree in education and a post-master's principal certification. He has also received certificates as a teacher of the handicapped and as a supervisor.

In 2015 and 2016, plaintiff sent a series of emails concerning what he believed were violations of State special education laws. In that regard, plaintiff pointed out that certain classrooms did not have the required paraprofessionals or one-to-one aides, certain students were not receiving proper bus services, and certain students were not receiving the support or services in their individual education programs (IEPs).

Many of those emails were sent to Harvey, who was the Supervisor of Special Education. As Supervisor of Special Education, Harvey was responsible for making sure that students' IEPs were implemented. Harvey testified that the Board had a policy requiring teachers to notify their supervisors if

3

paraprofessionals or one-to-one aides were missing from their classrooms, so those positions could be filled. However, it sometimes took the Board time to hire the support needed.

In 2015, the Board's Human Resources Department was placed under state monitoring. In February 2016, plaintiff applied for the position of Supervisor of Special Education. Lucy Feria, a Board superintendent, asked plaintiff to apply for that position. According to plaintiff, Howard, the School Business Administrator (SBA), thereafter told him that he would not get the position.

Plaintiff was denied an interview and told that he did not meet the minimum qualifications for the Supervisor of Special Education position. Specifically, Johnson, who held the position of Assistant Superintendent of Talent Acquisition and Development, sent plaintiff an email on February 22, 2016, explaining why he did not get the position. That email stated that plaintiff's resume did not list five years of administrative or supervisory experience, which was a requirement for the position of Supervisor of Special Education. Ultimately, the position was filled by an individual selected by the state monitor.

In September, October, and November 2016, plaintiff sent emails to Harvey complaining that he was not being paid for his work as a home instructor

4

in a timely manner.  Harvey was responsible for overseeing the payment of home instructors by submitting their timesheets to the Board's Payroll Department. Plaintiff also sent emails to Feria and others concerning his delayed payments.

In October 2016, Harvey forwarded an email chain concerning plaintiff's complaints about the delayed payments to Howard.  As SBA, Howard acted as the Board's Chief Financial Officer and oversaw payroll.  Howard testified that she investigated plaintiff's complaints and, as part of that process, had the Payroll Department pull all of plaintiff's timesheets.  A review of those timesheets revealed discrepancies.  In that regard, there were forty-four instances where plaintiff had sought to be paid for performing two different functions at the same time.

In late 2016, plaintiff was advised of the discrepancies in his timesheets. In January 2017, plaintiff met with Johnson and Howard to discuss his timesheets. During that meeting, Johnson reviewed each timesheet with plaintiff and questioned him about the discrepancies, primarily why the timesheets listed plaintiff as being in two places at the same time.  Plaintiff informed Johnson and Howard that he was not going to answer their questions on the advice of his legal counsel.

A-2675-23

On February 8, 2017, the Board certified tenure charges against plaintiff based on his alleged submission of false timesheets. Thereafter, on February 28, 2017, plaintiff was suspended without pay pending the adjudication of the tenure charges.

The tenure charges were submitted to arbitration. Following a hearing, an arbitrator found that there were errors and inconsistencies in plaintiff's timesheets, some of which plaintiff admitted. The arbitrator, however, concluded that plaintiff had not deliberately falsified his timesheets and that the discrepancies did not warrant dismissal from his tenured-teaching position. Consequently, the tenure charges against plaintiff were dismissed on November 10, 2017. Ten days later, on November 20, 2017, plaintiff was reinstated to his teaching position. Plaintiff's extra duty assignments did not resume following his return to work.

In February, March, and April 2018, plaintiff sent emails concerning a disruptive student and a classroom that did not have a paraprofessional as required by law. The first email was sent on February 22, 2018, to Paula Bethea, the Principal of Joyce Kilmer School, and George Benton, the Vice Principal, and complained about a disruptive student, N.W., being placed in plaintiff's classroom in violation of the student's IEP.

Plaintiff sent a second email on March 13, 2018, addressed to Bethea, Benton, and Marella Holmes, a school social worker, voicing concerns about his classroom not having a paraprofessional to assist in supplementary instruction, which was legally required given the class size. Then, in an email dated April 9, 2018, plaintiff wrote to Bethea and Holmes complaining again about N.W.'s conduct and stating that his classroom was missing a legally required aide. At his deposition, plaintiff testified that he was not aware of any retaliation taken by Bethea, Benton, or Holmes related to the emails he sent in early 2018.

In late June 2018, plaintiff applied for a position as a vice principal. He was granted a first interview but was then denied a second interview for the position. Thereafter, four other individuals were hired as vice principals.

On December 11, 2018, plaintiff sued defendants alleging a hostile work environment, association-based discrimination, and retaliation in violation of CEPA and the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -50. Following the completion of discovery, defendants moved for summary judgment, contending that plaintiff had failed to establish a prima facie case of discrimination or retaliation in violation of CEPA or the LAD.

The trial court heard oral argument on the summary judgment motion on May 26, 2023. That same day, the court entered an order granting summary

judgment to defendants and dismissing plaintiff's complaint with prejudice. The court explained its reasons on the record.

The court considered the applicable statute of limitations and determined that the continuing violation doctrine did not apply and, therefore, that many of plaintiff's claims were time-barred. In reaching that conclusion, the trial court stated: "The [c]ourt . . . finds that the other allegations . . . of prior alleged whistleblowing activity . . . were [discrete] acts that were separate and apart from the alleged activity here, which really focuses on . . . the time period . . . after December 11th of 2017."

The trial court then focused on plaintiff's whistleblowing activity within the statutory period, namely his emails from February and March of 2018, and determined that he had not established a causal connection between that activity and any alleged retaliation. The court noted that plaintiff had admitted he did not feel retaliated against because of the emails he sent in February and March of 2018. In addition, the trial court concluded that the denial of a second interview for the vice principal position in June 2018 was not an adverse employment action related to any whistleblowing activity that occurred within the statutory limitations period.

Plaintiff moved for reconsideration, and the trial court heard oral argument on that motion on February 14, 2024. Thereafter, on April 2, 2024, the court issued an order and written statement of reasons denying plaintiff's motion for reconsideration.

Plaintiff now appeals from the May 26, 2023 order granting summary judgment to defendants and the April 2, 2024 order denying his motion for reconsideration.

II.

On appeal, plaintiff argues that the trial court erred in dismissing his CEPA claims, contending that he established a prima facie case of retaliation in violation of CEPA and that there were material issues of disputed facts that precluded summary judgment. In making that argument, plaintiff asserts that the Board's alleged retaliatory actions against him prior to December 11, 2017, constituted continuing violations of CEPA and that the trial court erred in not considering those actions. Plaintiff also asserts that there was a causal connection between his whistleblowing activity and the adverse employment action of him not being appointed vice principal in June 2018.[1]

---

[1] Plaintiff is not appealing the dismissal of his claims under the LAD, which were based on a theory of associational discrimination.

We review a grant of summary judgment de novo, applying the same standard as the trial court. Samolyk v. Berthe, 251 N.J. 73, 78 (2022). That standard requires us to "determine whether 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.'" Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021) (quoting R. 4:46-2(c)). "Summary judgment should be granted . . . 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Friedman v. Martinez, 242 N.J. 449, 472 (2020) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). We do not defer to the trial court's legal analysis or statutory interpretation. RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018); Perez v. Zagami, LLC, 218 N.J. 202, 209 (2014).

A. CEPA's Statute of Limitations.

The statute of limitations for claims arising under CEPA is one year. See N.J.S.A. 34:19-5. Accordingly, if a plaintiff alleges retaliatory actions outside the one-year limitation period, those claims are barred. See N.J.S.A. 34:19-5 (setting a one-year statute of limitations); N.J.S.A. 34:19-3 (making it unlawful

for an employer to retaliate against an employee for whistleblowing). See also Beck v. Tribert, 312 N.J. Super. 335, 346 (App. Div. 1998) (finding that a former employee's claim for retaliatory discharge which was brought twenty-two months after he was terminated was time-barred by CEPA's one-year statute of limitations). The New Jersey Supreme Court has explained that when analyzing whether a plaintiff's CEPA claims are time-barred, the focus should be on the date of the alleged retaliation rather than the date of the whistleblowing activity. See Green v. Jersey City Bd. of Educ., 177 N.J. 434, 437-38 (2003) (explaining that "the CEPA one-year statute of limitations, N.J.S.A. 34:19-5, begins to run from the . . . act of retaliation").

There is, however, an exception for conduct that is part of a pattern of continuing discriminatory conduct. Roa v. Roa, 200 N.J. 555, 566 (2010). "[A] judicially created doctrine known as the continuing violation theory has developed as an equitable exception to the statute of limitations." Ibid. (quoting Bolinger v. Bell Atl., 330 N.J. Super. 300, 306 (App. Div. 2000)) (internal quotation marks omitted). This doctrine applies to claims arising under CEPA. See Green, 177 N.J. at 447-48; Beasley v. Passaic Cnty., 377 N.J. Super. 585, 609-10 (App. Div. 2005).

Under the continuing violation doctrine, "a plaintiff may pursue a claim for discriminatory conduct if he or she can demonstrate that each asserted act by a defendant is part of a pattern and at least one of those acts occurred within the statutory limitations period." Shepard v. Hunterdon Developmental Ctr., 174 N.J. 1, 6-7 (2002) (citing West v. Phila. Elec. Co., 45 F.3d 744, 754-55 (3d Cir. 1995)). The Supreme Court has recognized that:

> "Retaliation," as defined by CEPA, need not be a single discrete action. Indeed, "adverse employment action taken against an employee in the terms and conditions of employment," N.J.S.A. 34:19-2e, can include . . . many separate but relatively minor instances of behavior directed against an employee that may not be actionable individually but that combine to make up a pattern of retaliatory conduct.
>
> [Green, 177 N.J. at 448.]

The Court has also instructed:

> [T]he continuing violation theory was developed to allow for the aggregation of acts, each of which, in itself, might not have alerted the employee of the existence of a claim, but which together show a pattern of discrimination. In those circumstances, the last act is said to sweep in otherwise untimely prior non-discrete acts.
>
> What the doctrine does not permit is the aggregation of discrete discriminatory acts for the purpose of reviving an untimely act of discrimination that the victim knew or should have known was actionable.

12

[Roa, 200 N.J. at 569.]

Plaintiff contends that he was subject to numerous adverse employment actions that constituted continuing violations of CEPA. Accordingly, he argues that the trial court erred in not considering the Board's actions from before December 11, 2017. He points to the following alleged retaliatory actions: (1) being denied an initial interview for the position of Supervisor of Special Education in February 2016; and (2) the Board's investigation into his timesheets and the resulting tenure charges against him in February 2017. In addition, he asserts that "the hostility with which [the defendants] addressed [him]" in emails from prior to December 11, 2017, constituted continuing violations of CEPA.

An objective review of the alleged adverse employment actions before December 11, 2017, establishes that those actions were discrete acts that were not part of a pattern of continuing discrimination. The Board's decision not to hire plaintiff as the Supervisor of Special Education in February 2016 was a discrete act. Plaintiff clearly knew he had made prior complaints and in February 2016 he also clearly knew he was not promoted. See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002) (holding that a retaliatory failure to promote is a discrete act, separately actionable as an "unlawful employment practice").

Regarding the tenure charges in February 2017, the Board's initial investigation into plaintiff's timesheets did not constitute actionable retaliation. See Beasley, 377 N.J. Super. at 606 ("'"Retaliatory action" does not encompass action taken to effectuate the "discharge, suspension or demotion."'  Therefore, an investigation of an employee is not normally considered retaliation." (quoting Keelan v. Bell Commc'ns Rsch., 289 N.J. Super. 531, 539 (App. Div. 1996))).  Notably, the Board had cause to investigate plaintiff because his timesheets contained forty-four discrepancies.

Moreover, the Board's decision to file and certify tenure charges against plaintiff and temporarily suspend him without pay were discrete actionable acts. Plaintiff either "knew or should have known" of the basis for his claim in February 2017.  Roa, 200 N.J. at 569.  See N.J.S.A. 34:19-2(e) (defining "[r]etaliatory action" to include the "discharge, suspension or demotion of an employee, or other adverse employment action taken against an employee in the terms and conditions of employment").

Further, defendants' alleged hostilities towards plaintiff prior to December 11, 2017, even when aggregated, do not rise to the level of continued adverse employment actions.  See Beasley, 377 N.J. Super. at 607 ("Adverse employment actions do not qualify as retaliation under CEPA 'merely because

they result in a bruised ego or injured pride on the part of the employee.' CEPA's purpose is to prevent retaliatory action against [whistleblowers], it is not to 'assuage egos or settle internal disputes at the workplace.'" (quoting Klein v. Univ. of Med. & Dentistry, 377 N.J. Super. 28, 45-46 (App. Div. 2005))).

Consequently, we hold that the continuing violation doctrine did not apply to plaintiff's claims. Therefore, the court correctly limited its analysis to the alleged adverse employment actions that occurred after December 11, 2017.

B.    Plaintiff's CEPA Claims Within the Statutory Period.

"The Legislature enacted CEPA to 'protect and encourage employees to report illegal or unethical workplace activities and to discourage public and private sector employers from engaging in such conduct.'" Dzwonar v. McDevitt, 177 N.J. 451, 461 (2003) (quoting Abbamont v. Piscataway Twp. Bd. of Educ., 138 N.J. 405, 431 (1994)). The statute "shields an employee who objects to, or reports, employer conduct that the employee reasonably believes to contravene the legal and ethical standards that govern the employer's activities." Hitesman v. Bridgeway, Inc., 218 N.J. 8, 27 (2014).

More specifically, CEPA prohibits an employer from taking retaliatory action against an employee who:

a. Discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer . . . that the employee reasonably believes:

(1) is in violation of a law, or a rule or regulation promulgated pursuant to law . . . .

[N.J.S.A. 34:19-3(a).]

To establish a prima facie CEPA action, a plaintiff must demonstrate that:

(1) he or she reasonably believed that his or her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy;

(2) he or she performed a "whistle-blowing" activity described in [N.J.S.A. 34:19-3(a)];

(3) an adverse employment action was taken against him or her; and

(4) a causal connection exists between the whistle-blowing activity and the adverse employment action.

[Lippman v. Ethicon, Inc., 222 N.J. 362, 380 (2015) (quoting Dzwonar, 177 N.J. at 462).]

"[O]nce a prima facie case is established, the burden of persuasion is shifted to the employer to rebut the presumption of discrimination by articulating some legitimate nondiscriminatory reason for the adverse employment action." Allen v. Cape May Cnty., 246 N.J. 275, 290-91 (2021) (quoting Kolb v. Burns, 320 N.J. Super. 467, 478 (App. Div. 1999)) (internal

16

quotation marks omitted).  "Upon such a showing by the employer, plaintiff has the ultimate burden of proving that the employer's proffered reasons were a pretext for the discriminatory action taken by the employer."  Id. at 291 (quoting Kolb, 320 N.J. Super. at 478) (internal quotation marks omitted).

The only actionable retaliation plaintiff alleges within the one-year statute of limitations period was his failure to get the position of vice principal in June 2018.  See Victor v. State, 401 N.J. Super. 596, 615-16 (App. Div. 2008) ("In the CEPA context, . . . we have held that, in order to be actionable, an allegedly retaliatory act must be 'sufficiently severe or pervasive to have altered plaintiff's conditions of employment in an important and material manner.'" (quoting El-Sioufi v. St. Peter's Univ. Hosp., 382 N.J. Super. 145, 176 (App. Div.2005))).  He claims that the retaliation in June 2018 was in response to whistleblower emails he sent to the named defendants and other representatives of the Board over the course of several years.

In 2015 and 2016, plaintiff sent twelve emails to Harvey and other individuals concerning what he believed were violations of State special education laws.  In those emails, plaintiff pointed out that certain classrooms did not have the required paraprofessionals or one-to-one aides, certain students

were not receiving proper bus services, and certain students were not receiving the support or services in their IEPs.

Next, in September through November 2016, plaintiff sent a series of emails complaining about not being paid for his work as a home instructor in a timely manner. Those emails were sent to Harvey, Feria, Assistant Superintendent for Special Services Elizabeth DeJesus, and others.

Then, in February, March, and April of 2018, plaintiff sent emails concerning a disruptive student placed in his classroom in violation of the student's IEP and a classroom that did not have a paraprofessional as required by law. Those emails were sent to Bethea, Benton, and Holmes.

Plaintiff failed to present any evidence that there was a causal connection between his alleged whistleblowing activities and his failure to be made a vice principal in June 2018. At his deposition, plaintiff stated that he did not know who made the decision to deny him a second interview for the position of vice principal in June 2018. He now argues, however, that because "[n]o one person worked in isolation, and email(s) addressed to one administrator were invariably passed along to all those within the chain of command," his whistleblower emails somehow resulted in him being denied the vice principal position. That bald assertion is insufficient to establish a prima facie showing of causation

18

under CEPA. See Ridge at Back Brook, LLC v. Klenert, 437 N.J. Super. 90, 97-98 (App. Div. 2014) (explaining that "[b]ald assertions are not capable of either supporting or defeating summary judgment").

Plaintiff also relies on Howard, Harvey, and Johnson's job titles as evidence of their involvement in the hiring process for the open vice principal positions. He, however, provided no evidence to link them to the hiring process or to the decision to deny him a second interview. Notably, none of the named defendants were on the interview panel for the open vice principal positions. Moreover, a review of the recommendation sheets and interview notes in the record reveals that none of the individuals who directly received plaintiff's whistleblower emails served on the hiring panel. Plaintiff has, therefore, presented no evidence that any decision maker involved in deciding who would receive the vice principal positions in June 2018, was aware of the emails he sent from 2015 to 2018.

Further, we note that the longer the time gap between a whistleblower's protected activities and the alleged retaliation, the more difficult it is to prove a causal link between the activities and the retaliation. See Maimone v. City of Atl. City, 188 N.J. 221, 237 ("The temporal proximity of employee conduct protected by CEPA and an adverse employment action . . . may support an

inference of a causal connection."). In this matter, plaintiff provided no evidence that the emails he sent in 2015, 2016, 2017, or early 2018, had any role in him not being promoted to vice principal in June 2018.

In short, plaintiff did not establish a prima facie showing of a CEPA violation. Therefore, the trial court appropriately granted defendants' motion for summary judgment and denied plaintiff's motion for reconsideration.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division