**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1988-18T4

JAMES DELORENZO,

    Plaintiff-Appellant,

v.

NEW JERSEY STATE POLICE,
COLONEL RICK FUENTES,
individually and in his capacity
as Superintendent of the New
Jersey State Police, and WILLIAM
ROBB, individually and in his
capacity as an employee with
the New Jersey State Police,

    Defendants-Respondents.

_____

Submitted April 28, 2020 – Decided August 20, 2020

Before Judges Accurso and Gilson.

On appeal from the Superior Court of New Jersey,
Law Division, Mercer County, Docket No. L-3190-10.

Schiller Pittenger & Galvin, PC, attorneys for
appellant (Robert B. Woodruff, of counsel and on the
brief; Jay Bentley Bohn, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondents (Sookie Bae, Assistant Attorney General, of counsel; Matthew J. Lynch, Deputy Attorney General, on the brief).

PER CURIAM

Plaintiff James DeLorenzo retired from his job as a state trooper in 2011 at the mandatory retirement age of fifty-five while under suspension for working full-time as an investigator for GEICO. In this action filed under the Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to -14, plaintiff claimed that his refusal to buckle to pressure to ease up on an internal affairs investigation in 2004, and his oral internal complaint in 2006 about the poor performance of the waste unit he was then effectively leading, which he reduced to writing two years later, spurred several retaliatory internal investigations of him, including one for sexual harassment of a subordinate, another for culpable inefficiency, and a third for being habitually late for work, which precluded his promotion to lieutenant and resulted in his referral to the Division of Criminal Justice for criminal prosecution in connection with his outside employment. Plaintiff also claimed the retaliation continued after he retired when the State Police denied him certain licenses, including a gun carry permit.

Judge Marbrey granted the State's motion for summary judgment, finding "the relationship between the alleged whistleblowing activity and the alleged adverse employment action is far too attenuated," to establish a causal link between the two. The judge also found that plaintiff's failure to find law enforcement-related employment following his retirement from the State Police "appears to be more closely related to the criminal charges that were brought against him for his misconduct in his position in 2011,[1] and for his having been employed with GEICO and the State Police simultaneously, while giving no notice to either." The judge also found that plaintiff failed to present any proof that the individuals who retaliated against him had any knowledge of his earlier alleged whistle-blowing activities and presented no proof beyond the opinions of certain friends and colleagues that the events were related.

Judge Marbrey further found plaintiff failed to establish the alleged retaliatory acts constituted a pattern or series of acts that, viewed cumulatively,

---

[1] Plaintiff was indicted by a State grand jury and tried twice on counts of second-degree official misconduct, second-degree pattern of official misconduct, second-degree computer theft, third-degree theft by deception and third-degree tampering with public records. The first trial ended in a mistrial on all counts. Plaintiff was acquitted of two charges in the second trial, and the jury hung on the remaining counts. The State subsequently dismissed the remaining charges, and plaintiff was afforded full back pay for the period of his suspension and permitted to retire with his full pension. He was fired from his job at GEICO the same month he was suspended by the State Police.

A-1988-18T4

could be considered a continuous violation, thereby making plaintiff's complaint timely under Shepherd v. Hunterdon Developmental Ctr., 174 N.J. 1, 21 (2002). The judge noted that four of the several acts plaintiff claimed were done in retaliation for his complaints were discrete acts, being three transfers to different assignments within the State Police and the failure to promote him to lieutenant, and the remainder "do not meet the test for a continuing violation, as they do not demonstrate any pattern when viewed cumulatively." The judge further found plaintiff failed to show that investigations of him in 2008 for inefficient supervision and habitual lateness and the 2009 investigation of his simultaneous employment by GEICO had anything whatsoever to do with his prior reports or were retaliatory in nature. Finally, the judge found the decision to prosecute plaintiff, was one made by the prosecuting authority, not the complaining entity, and thus could not support a CEPA allegation against the State Police for referring the matter to Criminal Justice.

Plaintiff appeals, contending the trial court erred in finding the absence of a causal link between his whistleblowing activities and defendant's retaliatory conduct, and that the retaliatory conduct to which plaintiff was subject was not continuous in nature. We disagree.

A-1988-18T4

We review summary judgment using the same standard that governs the trial court. Chiofalo v. State, 238 N.J. 527, 539 (2019). As the parties agreed on the material facts for purposes of the motion, our task is limited to determining whether the trial court's ruling on the law was correct. Prudential Prop. & Cas. Ins. v. Boylan, 307 N.J. Super. 162, 167 (App. Div. 1998).

Plaintiff worked for the State Police for nearly thirty years. He was suspended in 2009 and retired in 2011. He identified two instances of whistleblowing conduct. The first occurred in 2005, when he was working in internal affairs, assigned to investigate a trooper's alleged misuse of a state-issued gas credit card. His supervisor told him the Colonel's office did not want the public knowing about an investigation finding a trooper "stealing gas" and directed him to take that information out of his report. Plaintiff refused. While plaintiff's supervisor did not address the subject again, plaintiff was shortly thereafter transferred out of internal affairs, and the investigation, which was not then complete, was re-assigned. The trooper was charged administratively for misuse of a State gas credit card.

The second "whistleblowing" occurred in 2006, following plaintiff's transfer to the solid/hazardous waste unit, as assistant unit head. When he was transferred, a major told plaintiff the unit was "messed up," and he wanted

plaintiff to straighten things out, and that doing so successfully would likely result in a promotion. Plaintiff claimed he tried to do so, establishing new protocols to address a backlog of investigations, but claimed he had little authority over the civilian investigators in the unit, several of whom were retired members of the State Police, who would come and go as they pleased. He complained about the unit's inadequate staffing and mismanagement to officers in the compliance unit, but declined to put his complaint in writing.

He finally did so two years later, long after his transfer to the electronic surveillance unit and the opening of three internal investigations targeting him, one in connection with a habitual tardiness complaint by a civilian subordinate in the solid/hazardous waste unit, another arising out of an anonymous complaint about him being habitually late to work while working in the unit, and the third for culpable inefficient supervision, stemming from his interview in connection with the sexual harassment complaint in which he claimed one of his subordinates was habitually late for work. Although plaintiff believes that all three investigations were initiated in retaliation for his complaint about mismanagement of the unit, he admits he has no evidence for that claim, including no evidence that the captain who initiated the investigation for

6

culpable inefficiency knew about his complaint about the inadequate staffing and mismanagement of the solid/hazardous waste unit.

We see no error in the trial court's finding that plaintiff's complaint, filed in August 2010, while timely as to his suspension in August 2009, was untimely as to any claims of retaliation in 2005, 2006 and 2008. CEPA has a one-year statute of limitations. N.J.S.A. 34:19-5. "[F]or limitations purposes, a 'discrete retaliatory or discriminatory act occur[s] on the day that it "happen[s]."'" Roa v. Roa, 200 N.J. 555, 567 (2010) (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 110 (2002)).

The trial court was correct to reject plaintiff's claim "that a series of discrete acts can constitute a continuing violation," as that is not the law. Certainly, "'[r]etaliation,' as defined by CEPA, need not be a single discrete action." Green v. Jersey City Bd. of Educ., 177 N.J. 434, 448 (2003). Under the continuing violation doctrine, it can instead be "many separate but relatively minor instances of behavior directed against an employee that may not be actionable individually but that combine to make up a pattern of retaliatory conduct." Ibid. But as Justice Long explained in Roa, "[w]hat the doctrine does not permit is the aggregation of discrete discriminatory acts

the purpose of reviving an untimely act of discrimination that the victim knew or should have known was actionable." 200 N.J. at 569.

Accordingly, Judge Marbrey was correct to find that the various transfers plaintiff complained of and defendant's failure to promote him were all time-barred discrete acts that could not be salvaged by resort to the continuing violation doctrine, see Shepherd, 174 N.J. at 19 (recognizing termination, failure to promote, transfer, or refusal to hire as examples of discrete acts actionable on the day they occur), and the remainder of his retaliation claims, such as the different investigations, a harassing anonymous phone call, and advice from a superior officer to think about the effect a complaint could have on his career, and that of his son, a new trooper, did not demonstrate a pattern when viewed cumulatively, see Bolinger v. Bell Atlantic, 330 N.J. Super. 300, 307 (App. Div. 2000) (noting a continuing violation must be "more than the occurrence of isolated or sporadic acts of intentional discrimination") (quoting Harel v. Rutgers State Univ., 5 F. Supp. 2d 246, 261 (D.N.J. 1998)).

Turning to the claim that was actionable, plaintiff's suspension, the judge was also correct to find that plaintiff failed to establish a prima facie case of retaliation based on that discrete act. A plaintiff's prima facie case under

N.J.S.A. 34:19-3c, consists of demonstrating: (1) that he had a reasonable belief that his "employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy"; (2) he engaged in "whistle-blowing" activity; (3) an adverse employment action was taken against him; and (4) "a causal connection exists between the whistle-blowing activity and the adverse employment action." Dzwonar v. McDevitt, 177 N.J. 451, 462 (2003). Judge Marbrey found plaintiff's claim foundered on the fourth prong, demonstrating a causal connection between plaintiff's whistleblowing and his suspension.

Specifically, the judge found plaintiff could not establish any connection between his refusal to alter a report at the request of a supervisor when he was an investigator in internal affairs in 2005 or his 2006 or 2008 complaints about understaffing and mismanagement in the solid/hazardous waste unit and his suspension for working full-time as an investigator for GEICO while a sworn member of the State Police in 2009. Plaintiff does not dispute that he became employed by GEICO in January 2008, that a State Police standard operating procedure prohibited outside employment without prior approval, that he never asked for approval, and, indeed, believed that a request to work at GEICO, had he asked, would have been denied.

Plaintiff also admitted that his supervisors at the State Police were required to report his employment by GEICO to internal affairs on learning of it, and that an internal investigation would have been opened into his conduct. Although plaintiff believed the captain who reported his dual employment did so in retaliation for plaintiff's whistleblower complaint about the solid/hazardous waste unit, he produced no evidence that the captain was even aware of his prior complaints.

Plaintiff admitted using his troop car to take care of work for GEICO, as well as receiving phone calls regarding his work for the company while on the clock for the State Police. Finally, plaintiff admitted that he lied to a lower ranked member of the State Police to obtain a confidential State Police investigative report involving two juveniles in connection with a GEICO claim, which he had been asked by GEICO to obtain. He also admitted he faxed the unredacted report to a GEICO claims examiner, who had been unable to obtain the report from the State Police herself.

Plaintiff's suspension occurred more than four years after his refusal to alter a report while an investigator in internal affairs, almost three years after his initial oral complaint about the solid/hazardous waste unit and nearly ten months after he reduced that complaint to writing. Given that the timing of

10

plaintiff's complaints and his suspension was not "unusually suggestive," it was incumbent on him to produce other evidence to establish the causal link. See Young v. Hobart W. Grp., 385 N.J. Super. 448, 467 (App. Div. 2005). Plaintiff's failure to put forth any competent evidence linking his whistle-blowing to his suspension for working full-time as an investigator for GEICO while working and being paid for full-time work as a New Jersey State Trooper was fatal to his retaliation claim. Further, no reasonable jury could find on this record that plaintiff's suspension for that dual employment was a pretext for retaliation. See Donofry v. Autotote Sys., Inc., 350 N.J. Super. 276, 292 (App. Div. 2001) (explaining how proof of pretext can, in conjunction with plaintiff's prima facie case, prove the required causal connection).

Because we are satisfied that summary judgment was appropriately entered based on Judge Marbrey's analysis rejecting application of the continuing violation doctrine on the undisputed facts and plaintiff's failure to establish the fourth prong of his prima facie case, we need not consider defendant's claim that plaintiff's proofs also failed the first prong because he could not identify any law, rule, regulation or clear mandate of public policy that he could reasonably believe was violated by inadequate staffing and

mismanagement of the solid/hazardous waste unit. <u>See</u> <u>Schechter v. N.J. Dep't of Law & Pub. Safety, Div. of Gaming Enf't</u>, 327 N.J. Super. 428, 435 (App. Div. 2000); <u>Young v. Schering Corp.</u>, 275 N.J. Super. 221, 237 (App. Div. 1994).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1988-18T4