**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2403-24

JAMES L. PFEIFFER,

     Plaintiff-Respondent,

v.

MATTHEW J. PLATKIN, Attorney
General State of New Jersey, and
PHILIP D. MURPHY, Governor
State of New Jersey,

     Defendants-Appellants.

_____

Argued October 8, 2025 – Decided November 5, 2025

Before Judges Currier, Berdote Byrne, and Jablonski.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-1029-24.

Tim Sheehan, Assistant Attorney General, argued the cause for appellants (Matthew J. Platkin, Attorney General, attorney; Michael L. Zuckerman, Deputy Solicitor General, of counsel; Tim Sheehan, of counsel and on the briefs; Ashleigh B. Shelton and Daniel S. Shehata, Deputy Attorneys General, on the briefs).

Brad M. Russo argued the cause for respondent (Russo Law Offices, LLC, attorneys; Brad M. Russo, on the brief).

PER CURIAM

Defendants, Attorney General Matthew Platkin and Governor Philip Murphy, were granted interlocutory leave to appeal from an order partially granting reconsideration and reinstating count three of plaintiff James L. Pfeiffer's complaint in part, which had been previously dismissed pursuant to Rule 4:6-2(e). Plaintiff, the former Warren County Prosecutor, sued defendants, contesting the validity of his resignation and the legality of the Attorney General's supersession of the Warren County Prosecutor's Office (WCPO).

On April 5, 2024, plaintiff met with the Attorney General (AG) in Trenton, where he was confronted with misconduct allegations and told to resign by the end of the day, which he did. In his complaint, plaintiff alleges the AG misrepresented the removal process for county prosecutors, and falsely claimed the final decision belonged solely to the AG, who had already decided to have plaintiff removed, regardless of what plaintiff would have said in his defense at a hearing. In fact, the Governor alone removes county prosecutors—for-cause, and after a public hearing.

Count three, the only count before us in this interlocutory appeal, alleged the resignation was invalid because it was obtained by duress, coercion, or misrepresentation. The trial court initially dismissed count three but, on a motion for reconsideration, reinstated count three only as to a misrepresentation theory, not coercion or duress.

Defendants contend the misrepresentation theory is novel and not recognized in New Jersey. In addition, they argue even if a misrepresentation cause of action is a cognizable claim, plaintiff was a county prosecutor and former Superior Court judge who could not, as a matter of law, have reasonably relied on the AG's obvious misstatements about the removal process and due process of law. We agree with both propositions and reverse the trial court's order.

I.

We accept the following facts alleged in plaintiff's complaint as true, as we must, for purposes of a motion to dismiss for failure to state a claim. Doe v. Est. of C.V.O., 477 N.J. Super. 42, 55 (App. Div. 2023). In 2020, plaintiff was nominated to the position of Warren County Prosecutor by Governor Murphy.

A-2403-24

He was confirmed by the Senate on June 12, 2020, and began his five-year term on July 9, 2020.[1]

In March 2022, employees of the WCPO filed a complaint with the Office of Public Integrity & Accountability (OPIA).[2] Later that month, plaintiff learned the complaint alleged "inappropriate acts by the staff of the WCPO including [plaintiff]."

On April 5, 2024, the AG summoned plaintiff to Trenton for a meeting that same day. At the meeting, the AG "demanded [plaintiff]'s resignation based on a report that listed four sustained findings against him," and informed plaintiff he was superseding the WCPO and "reliev[ing] him of his duties."

According to plaintiff the AG "refused to discuss the basis for his demand" to resign. Additionally, he "repeatedly" told plaintiff: "This [is] not a discussion; I have made my decision - you are done," and "If you do not resign things will get worse for you." The AG also stated the decision regarding

---

[1] Plaintiff had previously served as a Superior Court judge in Vicinage 13 from 2005 to 2007.

[2] The OPIA is an office within the Department of Law and Public Safety that "investigate[s] and prosecute[s] matters involving public corruption, election-related crimes, and criminal official misconduct by law enforcement officers, among other matters." Office of Public Integrity & Accountability, Off. of the Att'y Gen., https://www.njoag.gov/about/divisions-and-offices/office-of-public-integrity-and-accountability-home (last visited Oct. 24, 2025).

plaintiff's future employment was the "[AG]'s alone." Plaintiff was told he could have a hearing, "but that would not matter as [the AG] would hire the hearing officer, who would make findings of fact, but ultimately the final decision was [the AG's]." The AG told plaintiff the final decision "had already been made on the information he had."

The AG "repeatedly threatened . . . that if [plaintiff] did not resign 'things will get worse for [him].'" Plaintiff was told he had "until the end of the day" to resign and "things will get a lot worse if you don't resign by the close of business." He was also told he was "not allowed to return to the WCPO."

Plaintiff requested a copy of the report containing the findings against him, which the AG agreed to provide if plaintiff "waived personal service." Plaintiff agreed to waive service, but a complete copy of the report had not been provided to him as of May 23, 2024, the day the complaint was filed.

At approximately 5:08 p.m., plaintiff spoke to the AG and "verbally agreed to resign." At 5:46 p.m., as plaintiff was driving, First Assistant Attorney General Lyndsay Ruotolo called plaintiff, and "demanded that he pull his vehicle over to the side of the road and immediately 'text' his resignation to her." Thereafter, plaintiff sent the following text message to Ruotolo:

> Lyndsay, pursuant to our conversations, I am retiring from the W[CPO]. My resignation from the office is effective today April 5,

> 2024. I thank you[,] the General and the Governor, for the opportunity to serve Warren County as the Prosecutor. I wish you and the General success in the future. Thank you.

Plaintiff alleged he sent the text after "[h]aving been advised that the decision had been made by the [AG] and . . . having no due process rights and without being given a complete copy of the report, a formal notice of charges and hearing forum, the time and opportunity to understand the charges or consult with an attorney regarding the allegations against him."

On April 10, 2024, plaintiff's counsel informed the AG plaintiff was contesting "the validity[] [of] and otherwise withdraw[ing][] his . . . resignation." In response, on April 12, the AG's office stated the attempt to rescind plaintiff's resignation was "without effect." On April 17, plaintiff's counsel wrote to the Governor, informing him plaintiff's resignation was "coerced . . . and thus invalid" and he remains the "legally appointed and confirmed Prosecutor for Warren County." The Governor did not respond.

In May 2024, plaintiff filed a four-count complaint against defendants pursuant to the Declaratory Judgment Act, seeking an order declaring plaintiff was not legally removed from his position and remains the "duly appointed and confirmed Warren County Prosecutor" and the Attorney General's supersession of the office was "void ab initio." In count one, plaintiff alleged his resignation

was void because it was sought and accepted by the AG rather than the Governor. In his second count, plaintiff alleged he was illegally removed from office when the Acting Warren County Prosecutor was sworn before plaintiff's alleged resignation. The third count alleged plaintiff's resignation was "illegal and invalid" because it was obtained by coercion and fraud. In the fourth count, plaintiff claimed the supersession of the WCPO was illegal because the required procedures were not followed.

The trial court subsequently granted defendants' motion to dismiss counts two and three with prejudice for failure to state a claim pursuant to Rule 4:6-2(e). The court denied defendants' motion to dismiss count one. Count four was dismissed by agreement of the parties.

On February 10, 2025, the court granted plaintiff's motion for partial reconsideration of the October 28, 2024 order pursuant to Rule 4:42-2. It reinstated count three of the complaint "limited to plaintiff's misrepresentation theory of involuntariness."

Pursuant to Rule 2:2-4, defendants moved for leave to appeal the trial court's interlocutory order, which we granted.

## II.

"Rule 4:6-2(e) motions to dismiss for failure to state a claim upon which relief [may] be granted are reviewed de novo." Baskin v. P.C. Richard & Son, LLC, 246 N.J. 157, 171 (2021). Like the trial court, in considering a Rule 4:6-2(e) motion, "[a] reviewing court must examine 'the legal sufficiency of the facts alleged on the face of the complaint,' giving the plaintiff the benefit of 'every reasonable inference of fact.'" Ibid. (quoting Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, PC, 237 N.J. 91, 108 (2019)). The test for determining the adequacy of a pleading is "whether a cause of action is 'suggested' by the facts." Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989) (quoting Velantzas v. Colgate-Palmolive Co., 109 N.J. 189, 192 (1988)). "[A] plaintiff is not required to prove its factual allegations at the motion-to-dismiss stage." Woodmont Props., LLC v. Twp. of Westampton, 470 N.J. Super. 534, 539-40 (App. Div. 2022).

County prosecutors are nominated by the Governor and confirmed by the Senate to serve five-year terms. N.J. Const. art. VII, § 2, ¶ 1. They are removeable by the Governor "for cause after a public hearing and upon due

notice and an opportunity to be heard in [their] defense." N.J.S.A. 52:17B-110.[3]

Pursuant to N.J.S.A. 52:17B-103, the AG "maintain[s] a general supervision over said county prosecutors with a view to obtaining effective and uniform enforcement of the criminal laws throughout the State." And aside from the Governor's removal power, the AG has the power to supersede a county prosecutor's office. N.J.S.A. 52:17B-106; see also Bulur v. New Jersey Off. of Att'y Gen., 261 N.J. 275, 288 (2025). If the Governor requests supersession, the AG "shall" supersede the office. N.J.S.A. 52:17B-106. If requested by the county freeholders or a grand jury, the AG "may" supersede the office. Ibid.

---

[3] Article V, Section Four, Paragraph Five, of the New Jersey Constitution provides that an "officer or employee" who receives compensation from the State may be removed by the Governor after a hearing, which is then subject to judicial review. The Supreme Court has held this provision is inapplicable to county prosecutors, who receive their salary from their respective counties, not the State. Morss v. Forbes, 24 N.J. 341, 371 (1957).

Plaintiff contends that as of 2018, the constitutional provision is applicable to county prosecutors because of changes in the law that now require the State to partially reimburse counties for their payment of prosecutors' salaries. See N.J.S.A. 2A:158-10. This issue is not relevant to the appeal. Regardless, the constitutional provision and the removal statute have the same procedures—a cause hearing, with the Governor as the final decisionmaker, and judicial review. See N.J.S.A. 52:17B-110 (stating the Governor may remove a county prosecutor after a hearing); see also Bullet Hole, Inc. v. Dunbar, 335 N.J. Super. 562, 572 (App. Div. 2000) (stating administrative determinations of the Governor are subject to judicial review pursuant to Rule 2:2-3(a)(2)).

A-2403-24

The trial court cited case law from other jurisdictions to find an alleged voluntary resignation may be invalid when "made in reasonable reliance on misinformation received from his employer." Comm'r of Metro. Dist. Comm'n v. Civ. Serv. Comm'n, 521 N.E.2d 401, 403 (Ma. App. Ct. 1988)). The court acknowledged the lack of binding New Jersey precedent, but noted this "does not render [plaintiff's] theory wrong; it just renders it, as far as this [c]ourt's initial research has indicated, novel."

The "novel theory" espoused by the trial court contradicts the governing standard for assessing the validity of voluntary resignations, which considers only "whether a reasonable person would have been prevented from exercising his free will under the circumstances," regardless of whether a plaintiff pleads his claim as coercion, duress, or misrepresentation. Plaintiff asks us to adopt a new, more lenient standard, which we decline to do.

The standards for "coercion" resignation claims and "misrepresentation" resignation claims are distinct. A resignation is involuntary pursuant to the "less stringent" misrepresentation standard "if induced by an employee's reasonable reliance upon an employer's misrepresentation of a material fact concerning the resignation." Id.

However, in <u>McBride v. Atlantic City</u>, 146 N.J. Super. 498, 503 (Law Div. 1974), <u>aff'd</u>, 72 N.J. 201 (1976), our courts established a resignation is invalid and obtained by "illegal means" only where duress of coercion are involved. The burden to show duress or coercion is on the plaintiff who is attempting "to avoid the effect of what appears on its face to be a valid resignation." <u>Ibid.</u> <u>McBride</u> involved a police officer who was apprehended while stealing copper wire from a building. The officer resigned after a meeting with his supervisors in which he was given the choice to resign or be criminally charged. Because the officer resigned, N.J.S.A. 40A:14-147, which entitles law enforcement officers to pre-removal hearings, was not applicable unless the resignation was invalid because of duress or coercion.

The court relied upon the contract definition of duress in deciding whether the resignation was a product of coercion or duress. <u>See</u> <u>ibid.</u> (citing <u>Rubenstein v. Rubenstein</u>, 20 N.J. 359, 366 (1956)). The test for duress or coercion is subjective[4] and considers the totality of the circumstances, including "age, sex, capacity, state of health, temperament, situation and relation of parties." <u>Id.</u> at 506. Duress requires the party be "prevented from exercising his free will" because of the other party's wrongful conduct and can be found even if the

---

[4] The <u>McBride</u> standard for duress is not objective, as defendants argue.

conduct would not affect a person of "ordinary firmness or courage." Ibid. Applying this standard, the court held the officer was not coerced because he was fully informed of the charges against him, and "as a police officer for almost four years he knew his legal rights as to hearing before discharge." Id. at 505-06. Pursuant to McBride, a resignation is invalid if obtained by coercion or duress. No precedent exists in New Jersey allowing us to adopt a different, less stringent standard where the resignation is claimed to be invalid because of misrepresentation.

Moreover, even if we were to agree with plaintiff's novel misrepresentation theory and its less stringent standard as a separate basis for invalidating a resignation -- aside from duress or coercion -- that standard is inapplicable here. The misrepresentation standard recognized in other states allows a court to invalidate a resignation only if it was "induced by an employee's reasonable reliance upon an employer's misrepresentation of a material fact concerning the resignation." Hargray v. City of Hallandale, 57 F.3d 1560, 1570 (11th Cir. 1995); accord Leheny v. City of Pittsburgh, 183 F.3d 220, 228 (3d Cir. 1999). This standard requires a showing of reasonable reliance on a false statement of material fact. See, e.g., Hargray, 57 F.3d at 1570.

12

Plaintiff, as a county prosecutor and former Superior Court judge, cannot, as a matter of law, show he reasonably relied on the AG's statements. Although plaintiff contends "[w]hen the [AG] directly states that he will personally manipulate the hearing process to ensure an unfavorable outcome for [p]laintiff – the statutory language affording the hearing simply retains no meaning," plaintiff was well aware he was entitled to due process, in the form of a hearing, and redress in the event that hearing was unfair. Misrepresentation may invalidate a resignation only if it is based upon an employee's <u>reasonable</u> reliance. <u>Hargray</u>, 57 F.3d at 1570.

Plaintiff alleges the AG made the following statements: plaintiff's future as county prosecutor was up to the AG alone ("statement 1"); and plaintiff was entitled to a hearing but, as the sole decisionmaker, the AG had already decided plaintiff would be removed ("statement 2").[5] Plaintiff posits statement 1 misrepresents the procedure for removal, as a county prosecutor may be removed for cause by the Governor, not the AG. N.J.S.A. 52:17B-110 ("In

---

[5] Plaintiff claims, for the first time on appeal, the AG's agreement with plaintiff not to release the OPIA report (which was later publicly released) is another material misrepresentation. We decline to address this argument because those allegations are not in the complaint or attached exhibits, and the argument was not addressed by the trial court. <u>See</u> <u>Roa v. Roa</u>, 200 N.J. 555, 562 (2010) (stating a motion to dismiss cannot rely on facts outside the pleadings). It is also outside the scope of this interlocutory grant of leave to appeal.

addition to any and all methods now provided by law for the removal from office of a county prosecutor, a county prosecutor may be removed from office by the Governor for cause after a public hearing and upon due notice and an opportunity to be heard in his defense."). Similarly, plaintiff contends statement 2 is also false because it suggests the hearing's outcome was predetermined.

The relevant question is not whether the statements were misrepresentations –they were– but whether plaintiff's reliance on these statements was reasonable. Plaintiff has adequately alleged the AG made false statements about the removal process he then relied upon in resigning. Nonetheless, the facts of this case compel us to conclude plaintiff's reliance was unreasonable as a matter of law. Given plaintiff's position as county prosecutor and a former Superior Court judge, he has failed to demonstrate he <u>reasonably</u> relied on the AG's assertion that he alone could decide whether plaintiff would be removed. Any reasonable person holding plaintiff's offices knew he was entitled to due process, including a hearing and legal redress if necessary.

Because plaintiff could not have reasonably relied on the AG's claim to be the sole decisionmaker in statement 1, the fact the AG claimed his decision was final, regardless of a future hearing in statement 2, was irrelevant and thus could not have been reasonably relied upon.

14

And, assuming the AG meant his decision was "final" in the sense his recommendation to the Governor to remove plaintiff even after a hearing would be followed by the Governor, that statement is merely an opinion or prediction about the strength of the evidence against plaintiff. An opinion or prediction, because it cannot be proven false, cannot be the basis of a misrepresentation claim. See Daibo v. Kirsch, 316 N.J. Super. 580, 589-90 (App. Div. 1998).

Reversed and remanded. The reconsideration order reinstating count three as to misrepresentation is reversed. Count three is dismissed in its entirety. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division